Joel P. Kelly, Esq. (SBN 100716)
Nicky Jatana, Esq. (SBN 197682)
Dawn T. Collins, Esq. (SBN 193440)
Talya Friedman, Esq. (SBN 216518)
JACKSON LEWIS LLP
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
(213) 689-0404 – Office / (213) 689-0430 – Fax
Email: KellyJ@jacksonlewis.com
Email: JatanaN@jacksonlewis.com
Email: CollinsD@jacksonlewis.com
Email: FriedmaT@jacksonlewis.com

Kenneth H. Wennergren, Esq. (SBN 086734)
WENNERGREN LAW OFFICES,
A Professional Corporation
199 South Figueroa Street, Third Floor
Ventura, California 93001
(805) 643-3890 Phone / (805) 830-6345 Fax
E-mail: khw@wennergrenlaw.com

Attorneys for Plaintiff
SURFWARE, INC., a California Corporation

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

CV08-06753 AHM AJWx

| | |
|---|---|
| SURFWARE, INC., a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> CELERITIVE TECHNOLOGIES, INC., an Arizona Corporation, TERRY SORENSEN, an individual, GLENN COLEMAN, an individual, EVAN SHERBROOKE, an individual and DOES 1-10, <br><br><br> Defendants. | CASE NO.: <br><br> **DEMAND FOR JURY TRIAL** <br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** <br><br> 1. **Computer Fraud and Abuse— Violation of 18 U.S.C. §1030;** <br> 2. **Computer Fraud - Cal. Penal Code § 502;** <br> 3. **Misappropriation of Trade Secrets - Cal. Civ. Code §3426 et seq.;** <br> 4. **Interference with Contractual Relations;** <br> 5. **Interference with Prospective Economic Advantage;** <br> 6. **Fraud and Deceit - Civ. Code §1572;** <br> 7. **Interference With Contracts;** <br> 8. **Breach of Written Contract;** <br> 9. **Breach of Covenant of Good Faith and Fair Dealing;** <br> 10. **Breach of Fiduciary Duty;** <br> 11. **Breach of the Duty of Loyalty;** <br> 12. **Violation of Business and Professions Code §17500—Unfair Competition;** <br> 13. **Violation of Business and Professions Code §17200—Unfair Business Practices;** <br> 14. **Civil Conspiracy** |

Plaintiff SURFWARE, INC. (hereinafter "SURFWARE"), a California corporation complains of Defendants TERRY SORENSEN ("SORENSEN"), an individual; GLENN COLEMAN ("COLEMAN"); an individual, EVAN SHERBROOKE ("SHERBROOKE"); an individual (collectively the "INDIVIDUAL DEFENDANTS"); CELERITIVE TECHNOLOGIES, INC., ("CELERITIVE") an Arizona Corporation; and DOES 1-25 and each of them (collectively referred to herein at "DEFENDANTS"), and alleges as follows:

## INTRODUCTION

1.     This action seeks to redress SURFWARE for a multiplicity of wrongs perpetrated by the INDIVIDUAL DEFENDANTS, three former SURFWARE officers, who abused their positions of trust to obtain SURFWARE's highly confidential proprietary trade secret information, including SURFWARE's industry-leading milling technology, confidential product developments, and customer lists.  In and after April 2006, the INDIVIDUAL DEFENDANTS embarked on a scheme to secretly and systematically misappropriate SURFWARE's confidential information and to usurp the Company's business opportunities in order to gain immediate success with a competing business without investing the effort and expense that would be required through lawful competition.

2.     Each of the INDIVIDUAL DEFENDANTS had access to SURFWARE's database of customer information which included contact names, addresses, emails, preferences, pricing and contract renewal dates for vendors, distributors and end users of SURFWARE's products and services.   Moreover, because INDIVIDUAL DEFENDANTS were exposed to the development of TrueMill®, SURFWARE's machining software and soon to be patented CAD/CAM technology they each had access to the proprietary source codes for the innovative technology that powers TrueMill® machining software.   This technology gives SURFWARE a substantial competitive advantage over other CAM software developers.

Case Name:   Surfware, Inc. vs.                                          2                           COMPLAINT FOR DAMAGES
                      Celeritive Technologies, Inc., et al.

Case No:

3.     By all accounts, the INDIVIDUAL DEFENDANTS' unfair competition has been successful.   Armed with SURFWARE's proprietary source codes and customer information, the INDIVIDUAL DEFENDANTS left SURFWARE and days later formed the competing corporation CELERITIVE.  Approximately six months later, DEFENDANTS' machining software VoluMill was on the market.  DEFENDANTS were able to develop VoluMill so quickly because it was derived from and used SURFWARE's proprietary machining software TrueMill® Specifically, SURFWARE is informed and believes that VoluMill utilizes SURFWARE's proprietary source codes. The INDIVIDUAL DEFENDANTS used their entire development effort for SURFWARE's machining software TrueMill® to quickly create CELERITIVE's machining software, VoluMill.  But the INDIVIDUAL DEFENDANTS did not stop there.  They have been marketing CELERITIVE's machining software VoluMill using SURFWARE's confidential customer lists.   CELERITIVE has and continues to compete with SURFWARE unfairly and unlawfully through the use of SURFWARE's misappropriated trade secrets.  The DEFENDANTS' unlawful conduct has given them an unfair competitive advantage.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action based on the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq. and 28 U.S.C. § 1331.   Supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1337(a) because they are closely related to claims in the action as to which the court has original jurisdiction.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and omissions complained of occurred in the County of Los Angeles and within this District.

## THE PARTIES

6.     SURFWARE was and is a corporation organized and existing under the laws of the State of California, primarily engaged in the development, production and

distribution of machining software and related goods and services, including the development of CAD/CAM technologies. During the INDIVIDUAL DEFENDANTS employment, SURFWARE maintained its principal place of business in the County of Los Angeles. SURFWARE subsequently moved its offices to the County of Ventura.

7.    Upon information and belief, SURFWARE alleges that Defendant SORENSEN is an individual who is, and at all relevant times has been, a resident of the County of Ventura.

8.    Upon information and belief, SURFWARE alleges that Defendant COLEMAN is an individual who is and at all relevant times has been a resident of the State of Arizona.

9.    Upon information and belief, SURFWARE alleges that Defendant SHERBROOKE is an individual who is and at all relevant times has been a resident of the County of Ventura.

10.    Upon information and belief, SURFWARE alleges that Defendant CELERITIVE is a corporation established under the laws of the state of Arizona with its principal place of business and registered address located at 28248 N. Tatum Blvd., B-1, Suite 148, Cave Creek, Arizona 85331.

11.    The true names and capacities of Defendants Does 1 through 25, inclusive, whether individual, corporate, associate or otherwise, are unknown to SURFWARE at this time. SURFWARE thus sues said Defendants, and each of them, by such fictitious names. SURFWARE will seek leave to amend this Complaint to insert said Defendants' true names when the same have been ascertained. SURFWARE is informed and believes and thereon alleges that each Doe Defendant is responsible in some manner for the damages alleged herein.

12.    SURFWARE is informed and believes and thereon alleges that each Defendant was the agent of each of the remaining Defendants, and in doing the acts herein alleged, was acting within the scope of such agency. Because of the agency

and/or employment relationship between Defendants, and each of them, each Defendant had actual or constructive knowledge of the acts of each of the other Defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Surfware, Inc.

13.     SURFWARE is a family business built on 58 years and three generations of expertise in the machining industry.  What began as a small mold shop for machine tooling medical products has, in the past eight years, become one of the fastest growing CAD/CAM software companies.

14.     In 1950, Victor Diehl opened a mold shop in Southern California.  His son Alan continued the tradition in the 1960s by investing in numerical control machines to expedite tooling of components for aircraft manufacturing.  In the 1980s Alan's sons Bryan and Larry joined their father's machining firm and shortly thereafter, in 1988, they formed SURFWARE.

15.     SURFWARE is recognized for its development, production and distribution of innovative machining software and related goods and services.  SURFWARE's success is dependent on its development of proprietary technology and innovative products and services as well as its ability to develop and maintain relationships with individual vendors, distributors and end users.

16.     Beginning on or about April 24, 2006, until his termination on April 12, 2007, SORENSEN was the CEO and President of SURFWARE.   As CEO and President, SORENSEN owed a fiduciary duty and duty of loyalty to SURFWARE.  He was entrusted with overseeing all aspects of SURFWARE's business which gave him unrestricted access to SURFWARE's proprietary technology, proprietary research and development and confidential customer information.

17.     COLEMAN began his employment at SURFWARE on or about August 28, 2000 as Director of Project Planning and was elevated to Vice President of Product Design on or about December 12, 2003.  He held this position until April 12,

2007 when he suddenly resigned to follow SORENSEN and SHERBROOKE to CELERITIVE to compete unlawfully and unfairly with SURFWARE.

18. SHERBROOKE began his employment at SURFWARE on or about November 8, 2004 as a System Architect and was elevated to Vice President of Product Development on September 7, 2005. He held this position until April 12, 2007, when he suddenly resigned to follow SORENSEN and COLEMAN to CELERITIVE to compete unlawfully and unfairly with SURFWARE. Upon information and belief, SHERBROOKE unlawfully accessed SURFWARE'S computer(s) and server without authorization and/or exceeding authorization and copied the system architecture for TrueMill®. This includes data structures and algorithms used to implement the solution as well as methodology for process communication for the entire complex set of processes which make up an entire CAM system. On information and belief, DEFENDANTS used this proprietary system architecture to create VoluMill.

**Surfware's Confidential And Proprietary Information and Trade Secrets**

19. Since it was established in 1988, SURFWARE has developed proprietary technologies used in its CAD/CAM products. Most recently, SURFWARE developed and sought to patent various features of TrueMill® a revolutionary machining software that changes the way metal is milled. What distinguishes TrueMill® machining software is the pattern and angle of cutting which allows the cutting tool to maintain a constant and predetermined interface with the material, even when cutting sharp corners. This innovative method drastically cuts down on cutting time and significantly increases the life span of the cutting tool, providing critical advantages for machine shops.

20. SURFWARE expends much effort and expense to maintain the confidentiality of its proprietary technology and product development, including the source codes that power the TrueMill® machining software.

21. SURFWARE also expends significant effort and expense to maintain existing relationships with vendors, distributors and end users, and to develop new

relationships.  To keep its competitive advantage, SURFWARE invests substantial time, effort and expense in collecting, organizing, analyzing, using and maintaining confidential and proprietary customer information.  Such confidential information is maintained on SURFWARE's databases which are accessible only to certain SURFWARE employees.  The INDIVIDUAL DEFENDANTS had access to these databases during their employment with SURFWARE. COLEMAN in particular was the primary person at SURFWARE responsible for communication and interaction with SURFWARE's resellers and customers.

22.    SURFWARE's databases contain a compilation of confidential customer information on actual and potential vendors, distributors, and end users which may include some or all of the following: (i) the names, addresses, telephone numbers, email addresses and fax numbers of each vendor, distributor and end user; (ii) name, titles and telephone numbers of individual contact persons; (iii) detailed records of communications with each vendor, distributor and end user; (iv) the history of all purchases by each vendor, distributor or end customer; (v) customers' preferences in regard to products and services; (vi) renewal dates of contracts; (vii) accounts receivable balances and aging; and, (viii) other information relevant to maintaining and expanding SURFWARE's business relationship with each vendor, distributor and/or end user.

23.    The confidential customer information contained on SURFWARE's databases and in company documents are extremely valuable assets.  The success of SURFWARE's business and its resulting revenue stream depend on SURFWARE's ability to successfully develop and market innovative products and services to an existing and expanding customer base which in turn depends on SURFWARE's ability to keep such confidential information out of the hands of competitors.

24.    SURFWARE's proprietary technology, confidential product developments and customer information is not generally known in the public or the machining industry and is not readily ascertainable by others.    SURFWARE's proprietary

Case Name:  Surfware, Inc. vs.                                   7                         COMPLAINT FOR DAMAGES
          Celeritive Technologies, Inc., et al.

Case No:

technology and customer information has been developed and compiled over a period of many years from numerous public and private sources and in-house research and development.   SURFWARE has incurred great cost and expense to develop and to maintain the confidentiality of its proprietary information and customer information.

### Surfware's Efforts To Protect Its Proprietary And Confidential Information and Trade Secrets From Disclosure

25.   SURFWARE takes specific steps to protect its proprietary and confidential information.  As a condition of employment, SURFWARE requires each employee to enter into a New Employee Confidential Information and Inventions Agreement ("Inventions Agreement") which prohibits disclosure of SURFWARE's proprietary and confidential information.

26.   SORENSEN executed an Inventions Agreement on April 18, 2006 (Exhibit "A" attached hereto).  COLEMAN executed an Inventions Agreement on August 15, 2000 (Exhibit "B" attached hereto).   SHERBROOKE executed an Inventions Agreement on November 8, 2004 (Exhibit "C" attached hereto).   The Inventions Agreement that all three INDIVIDUAL DEFENDANTS entered into as a condition of their employment, contains the following provisions, among others:

> I acknowledge that Surfware possesses and will continue to develop and acquire valuable Confidential Information…, including information that I may develop or discover as a result of my employment with Surfware.   The value of that Confidential Information depends on it remaining confidential. Surfware depends on me to maintain that confidentiality, and I accept that position of trust.  (Inventions Agreement, Sections 1(a)).

* * * *

I will not disclose or use at any time, either during or after my employment with Surfware, any Confidential Information except for the exclusive benefit of Surfware as required by my duties for Surfware, or as Surfware expressly may consent to in writing. I will cooperate with Surfware and use my best efforts to prevent the unauthorized disclosure, use, or reproduction or any or all Confidential Information. (Inventions Agreement, Section 1(c)).

\* \* \* \*

I agree to communicate to Surfware as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment with Surfware. (Inventions Agreement, Section 2(a)).

\* \* \* \*

. . .during my employment with Software, I will not, without Surfware's express written consent, engage in any employment or business other than for Surfware, or invest in or assist (in any manner) any business competitive with the business of the future business plans of Surfware, other than small passive interests in publically traded companies. (Inventions Agreement, Section 3(a)).

27.   SORENSEN, as President and CEO, executed an Employment Agreement whereby he agreed to the following:

You acknowledge that upon commencement of your employment, you will owe a duty of loyalty to Surfware and that all of your services shall be performed conscientiously and

Case Name:  Surfware, Inc. vs.
          Celeritive Technologies, Inc., et al.
Case No:

9                    COMPLAINT FOR DAMAGES

to the fullest extent of your abilities.  You will not engage or participate in any business that is competitive with the business of Surfware.  You will be expected to comply with and be bound by Surfware's operating policies, procedures and practices.   (Sorensen Employment Agreement, Section 2)(Exhibit "D" hereto).

* * * *

During the term of this Agreement and for one year thereafter, you will not, on your own behalf or on behalf of any third party, solicit or induce any employee of SURFWARE to terminate employment with SURFWARE.  (Sorensen Employment Agreement, Section 11)(Exhibit "D" hereto).

### Defendants' Unfair Competition

28.    During each of the INDIVIDUAL DEFENDANTS' employment at SURFWARE, they had unrestricted access, were entrusted with, and exposed to SURFWARE's trade secrets and other confidential and proprietary information.  As a result of their employment at SURFWARE, the INDIVIDUAL DEFEDANTS became intimately aware of the details of SURFWARE's proprietary technology, confidential product development and customer information, including, names, addresses, contact persons, preferences, pricing information and contract expiration/renewal dates for SURFWARE's vendors, distributors and end users.

29.    In April 2006, after years of working for SURFWARE, COLEMAN and SHERBROOKE threatened to resign unless SURFWARE gave them and several other individuals a controlling interest in SURFWARE.  The change in controlling interest was rejected.  In November 2006, COLEMAN and SHERBROOKE again threatened to resign unless SURFWARE entered into an agreement to start a new company, in which

Case Name:  Surfware, Inc. vs.                           10                    COMPLAINT FOR DAMAGES
                    Celeritive Technologies, Inc., et al.

Case No:

1  COLEMAN and SHERBROOKE would have a controlling interest that would exist as a
2  joint venture between SURFWARE and COLEMAN/SHERBROOKE.         At
3  SORENSEN's instigation SURFWARE agreed to explore the possibility of the joint
4  venture between SURFWARE and COLEMAN/SHERBROOKE.

5        30.    As part of the agreement to pursue the joint venture, COLEMAN and
6  SHERBROOKE agreed to prepare a business plan for the joint venture to be presented
7  to SURFWARE.    In addition, COLEMAN and SHERBROOKE also entered into
8  purported "Mutual Non-Disclosure Agreements" ("NDA") with SURFWARE whereby
9  they agreed:

10              The Receiving Party [COLEMAN and SHERBROOKE]
11              understands and agrees that it is not allowed to sell, license,
12              develop or otherwise exploit any parts, products, services,
13              documents or information which embody in whole or in part
14              any [SURFWARE] Confidential Information.  (NDA, Section
15              5) (Exhibit "E" and "F" hereto).

16        31.    However, despite promises to do so, COLEMAN and SHERBROOKE
17  never submitted a business plan for the joint venture for SURFWARE's consideration.
18  COLEMAN and SHERBROOKE never intended to follow through with the joint
19  venture plan, and instead worked in secret on their own business plan from April 2006
20  through and beyond November 2006 with the intent of leaving SURFWARE to form a
21  competing company using SURFWARE's proprietary technology, confidential product
22  development, accounting records (sales and expenses) and customer information,
23  including, names, addresses, contact persons, preferences, pricing information and
24  contract expiration/renewal dates for SURFWARE's vendors, distributors and end
25  users.

26        32.    On information and belief, any purported work COLEMAN and
27  SHERBROOKE did in furtherance of the "joint venture" was in fact for their own

28

1    benefit and in furtherance of their scheme to obtain SURFWARE's trade secrets, leave

2    SURFWARE and unfairly and unlawfully compete with SURFWARE.

3        33.    On information and belief, SORENSEN, while acting as President and

4    CEO of SURFWARE, breached his fiduciary duty and duty of loyalty by conspiring

5    with COLEMAN and SHERBROOKE to pirate SURFWARE's trade secrets and aid

6    and abet COLEMAN and SHERBROOKE in starting an entirely new venture to

7    unfairly and unlawfully compete with SURFWARE.

8        34.    On April 12, 2007, SORENSEN was terminated as CEO and President of

9    SURFWARE. On April 11, 2007, the day before his termination, SORENSEN emailed

10    a list of over 135 email addresses of SURFWARE customers from his SURFWARE

11    email address to his home email address.  SURFWARE invested substantial time, effort

12    and expense in collecting, organizing and developing these client lists which are not

13    available to the public. The information was confidential and proprietary and owned by

14    SURFWARE. With a few clicks of his computer, SORENSEN misappropriated this

15    information.

16        35.    The very same day SORENSEN was terminated, COLEMAN and

17    SHERBROOKE suddenly resigned from SURFWARE.  SURFWARE is informed and

18    believes and thereby alleges that SORENSEN breached his Employment agreement

19    with SURFWARE and solicited COLEMAN and SHERBROOKE to resign and

20    ultimately form CELERITIVE.  After SORENSEN's termination and COLEMAN and

21    SHERBROOKE's resignation several of SURFWARE's resellers informed

22    SURFWARE that COLEMAN AND SHERBROOKE repeatedly called them in

23    attempts to procure business for CELERITIVE.

24        36.    However, while still employed with SURFWARE, in or around June 2006,

25    SHERBROOKE wrote about how he planned to carry out an illegal scheme to unfairly

26    compete against SURFWARE. SHERBROOKE wrote,

27

28

Case Name:  Surfware, Inc. vs.          12          COMPLAINT FOR DAMAGES
          Celeritive Technologies, Inc., et al.
Case No:

"[W]e [SHERBROOKE and COLEMAN] are planning to leave to form our own company together. We have spent the last two months working out the details and putting a business plan together, and we believe the most lucrative option for us is actually to develop a toolpath engine that would compete directly with TrueMill . . ."

37.   On April 27, 2007, *less than 15 days* after their separation from employment at SURFWARE, the INDIVIDUAL DEFENDANTS were registered as the directors of a new Arizona corporation called Celeritive Technologies, Inc. Less than a year after forming CELERITIVE, the DEFENDANTS' machining software product VoluMill was on the market. On information and belief, VoluMill machining software uses many of the same revolutionary toolpath machining creation techniques used in SURFWARE's TrueMill® machining software.

38.   On information and belief, the DEFENDANTS used SURFWARE's trade secret and proprietary information, including the source codes, to develop VoluMill, CELERITIVE's main product offering. On information and belief, the DEFENDANTS used and are currently using SURFWARE's propriety customer information to market VoluMill.

39.   On September 5, 2007 and September 14, 2007, SURFWARE sent cease and desist letters to the INDIVIDUAL DEFENDANTS informing them that they must cease and desist from using SURFWARE's proprietary and trade secret information. The INDIVIDUAL DEFENDANTS ignored SURFWARE's request and continued to compete unfairly with SURFWARE.

### FIRST CAUSE OF ACTION
#### (Computer Fraud and Abuse—Violation of 18 U.S.C. §1030; Against The Individual Defendants)

40.   SURFWARE hereby incorporates by reference Paragraphs 1 through 39 as though fully set forth herein.

41.   SURFWARE maintains a computer system and server used to communicate with SURFWARE's employees, customers and vendors. The computers

Case Name: Surfware, Inc. vs.
        Celeritive Technologies, Inc., et al.
Case No:

13                    COMPLAINT FOR DAMAGES

and computer server are "protected" computers and/or computer devices within the meaning of 18 U.S.C. §1030(e)(2).

42.    The express terms of usage of SURFWARE's protected computers prohibited access and/or use for any reason not directly related to the business of SURFWARE. The INDIVIDUAL DEFENDANTS knew these terms of usage.

43.    The INDIVIDUAL DEFENDANTS worked for SURFWARE in positions in which they had access to SURFWARE'S trade secrets and proprietary and confidential information which was stored on SURFWARE's protected computers. These trade secrets and other confidential and proprietary information included, but were not limited to, SURFWARE's customer lists and software programs for TrueMill®.

44.    The INDIVIDUAL DEFENDANTS were under a duty not to use or disclose any of SURFWARE's trade secrets and confidential and proprietary information for any purpose other than in connection with their employment at SURFWARE, or to disclose such information to anyone outside SURFWARE without SURFWARE'S express authorization.

45.    Each of the INDIVIDUAL DEFENDANTS, acting for his own personal gain and self-interest and without authorization and/or exceeding authorization from SURFWARE, accessed SURFWARE's protected computer(s) through which he accessed the computer server in violation of 18 U.S.C. §1030.

46.    Each of the INDIVIDUAL DEFENDANTS, acting for his own personal gain and self-interest and without authorization and/or exceeding authorization from SURFWARE, accessed SURFWARE's protected computer(s) and servers and pirated valuable SURFWARE's customer lists and proprietary software programs for TrueMill®. The value of this information was something other than the use of SURFWARE's computers itself.

47.    Each of the INDIVIDUAL DEFENDANTS, acting for his own personal gain and self-interest and without authorization and/or exceeding authorization from

Case Name: Surfware, Inc. vs.                    14                    COMPLAINT FOR DAMAGES
         Celeritive Technologies, Inc., et al.

Case No:

SURFWARE, accessed protected SURFWARE computer(s) and the server and used a portable "hard drive" device to copy all information, the value of which was something other than the use of SURFWARE's computers itself.

48.     The INDIVIDUAL DEFENDANTS, prior to their termination or sudden resignations from employment with SURFWARE, did the acts set forth above in the preceding paragraphs for the purpose of wrongfully, unfairly and illegally competing with SURFWARE.  This conduct was a serious breach of fiduciary duty and breach of loyalty to SURFWARE.

49.     Each of the INDIVIDUAL DEFENDANTS, knowingly, with the intent to defraud, transfer and/or obtain control of said information, accessed SURFWARE's protected computer(s) without authorization and/or exceeding authorization, and obtained valuable TrueMill® source codes and other trade secret and proprietary, confidential information. The value of this information was something other than the use of SURFWARE's computers itself.   Although the amount of SURFWARE's economic and non-economic damages is presently unascertainable, such damages are in excess of $5,000.  The exact of amount of such damages will be proven at trial.

50.     Each of the INDIVIDUAL DEFENDANTS did in fact defraud, transfer and/or obtain control of SURFWARE's confidential and proprietary trade secret information.  As a result of the INDIVIDUAL DEFENDANTS improperly accessing SURFWARE's computers without appropriate authorization, the INDIVIDUAL DEFENDANTS have unfairly obtained significant profits, to which they are not entitled.

51.     SURFWARE is informed and believes that trade secret and confidential information improperly obtained has been involved in interstate communication, as the INDIVIDUAL DEFENDANTS are now principals in a competing Arizona company called CELERITIVE after having been discharged and/or suddenly resigned from their employment at SURFWARE.

Case Name:  Surfware, Inc. vs.                            15                    COMPLAINT FOR DAMAGES
                Celeritive Technologies, Inc., et al.

Case No:

52.     As a direct and proximate result of the INDIVIDUAL DEFENDANTS' violation of 18 USC 1030, SURFWARE has suffered substantial damages. SURFWARE is entitled to lost profits suffered as a result of the INDIVIDUAL DEFENDANTS' conduct in an amount to be determined at trial and the costs and fees of prosecuting this action.   DEFENDANTS should forfeit income and profits derived from their wrongful, unfair and illegal conduct.

53.     Unless restrained, the INDIVIDUAL DEFENDANTS will continue to engage in the acts, conduct and omissions set forth above which have resulted and will continue to result in irreparable injury to SURFWARE.   The exact extent, nature and amount of SURFWARE's injuries and damages are extremely difficult to ascertain.   The continuing acts, conduct and omissions by the INDIVIDUAL DEFENDANTS may also cause a multiplicity of suits by SURFWARE.   Monetary damages alone do not offer an adequate remedy.   SURFWARE therefore requests that during the pendency of this action, this Court issue a preliminary injunction, and that after trial, this Court issue a permanent injunction, restraining and enjoining the INDIVIDUAL DEFENDANTS and their agents, employees, attorneys and representatives and anyone acting at their direction or on their behalf from using SURFWARE's confidential and proprietary information.

### SECOND CAUSE OF ACTION
#### (Violation of California Penal Code § 502 – Computer Fraud – Against The Individual Defendants)

54.     SURFWARE hereby incorporates by reference Paragraphs 1 through 53 as though fully set forth herein.

55.     SURFWARE maintains computers and servers used to communicate with SURFWARE's employees, customers and vendors.   The computers and servers are a "computer system" within the meaning of Cal. Penal Code § 502 (b)(5).

56.   The express terms of usage of SURFWARE's protected computers prohibited access and/or use for any reason not directly related to the business of SURFWARE. The INDIVIDUAL DEFENDANTS knew these terms of usage.

57.   The INDIVIDUAL DEFENDANTS worked for SURFWARE in positions in which they had access to SURFWARE'S trade secrets and proprietary and confidential information which was stored on SURFWARE's protected computers. These trade secrets and other confidential and proprietary information included, but were not limited to, SURFWARE's customer lists and software programs for TrueMill®.

58.   The INDIVIDUAL DEFENDANTS were under a duty not to use or disclose any of SURFWARE's trade secrets and confidential and proprietary information for any purpose other than in connection with their employment at SURFWARE, or to disclose such information to anyone outside SURFWARE without SURFWARE'S express authorization.

59.   Each of the INDIVIDUAL DEFENDANTS, acting for their own personal gain and self-interest and without authorization and/or exceeding authorization from SURFWARE, accessed SURFWARE's protected computer(s) through which he accessed the computer server in violation of Cal. Penal Code § 502.

60.   Each of the INDIVIDUAL DEFENDANTS, acting for their own personal gain and self-interest and without authorization and/or exceeding authorization from SURFWARE, accessed SURFWARE's protected computer(s) and servers and pirated valuable SURFWARE's customer lists and proprietary software programs for TrueMill®.   The value of this information was something other than the use of SURFWARE's computers itself.

61.   Each of the INDIVIDUAL DEFENDANTS, acting for their own personal gain and self-interest and without authorization and/or exceeding authorization from SURFWARE, accessed protected SURFWARE computer(s) and the server and used a

portable "hard drive" device to copy all information, the value of which was something other than the use of SURFWARE's computers itself.

62. The INDIVIDUAL DEFENDANTS, prior to their termination or sudden resignations from employment with SURFWARE, did the acts set forth above in the preceding paragraphs for the purpose of wrongfully, unfairly and illegally competing with SURFWARE. This conduct was a serious breach of fiduciary duty and breach of loyalty to SURFWARE.

63. Each of the INDIVIDUAL DEFENDANTS, knowingly, with the intent to defraud, transfer and/or obtain control of said information, accessed SURFWARE's protected computer(s) without authorization and/or exceeding authorization, and obtained valuable TrueMill® source codes and other trade secret and proprietary, confidential information. The value of this information was something other than the use of SURFWARE's computers itself. Although the amount of SURFWARE's economic and non-economic damages is presently unascertainable, such damages are in excess of $5,000. The exact of amount of such damages will be proven at trial.

64. Each of the INDIVIDUAL DEFENDANTS did in fact defraud, transfer and/or obtain control of SURFWARE's confidential and proprietary trade secret information. As a result of the INDIVIDUAL DEFENDANTS improperly accessing SURFWARE's computers without appropriate authorization, the INDIVIDUAL DEFENDANTS have unfairly obtained significant profits, to which they are not entitled.

65. SURFWARE is informed and believes that trade secret and confidential information improperly obtained has been involved in interstate communication, as the INDIVIDUAL DEFENDANTS are now principals in a competing Arizona company called CELERITIVE after having been discharged and/or suddenly resigned from their employment at SURFWARE.

66.     As a direct and proximate result of DEFENDANTS' violation of Cal. Penal Code § 502, SURFWARE has suffered substantial damages.  SURFWARE is entitled to lost profits suffered as a result of the INDIVIDUAL DEFENDANTS' conduct in an amount to be determined at trial and the costs and fees of prosecuting this action. DEFENDANTS should forfeit income and profits derived from their wrongful, unfair and illegal conduct.

67.     The INDIVIDUAL DEFENDANTS' acts described above were willful, wanton, malicious and oppressive in that DEFENDANTS misappropriated SURFWARE's trade secrets with the deliberate intent to injure SURFWARE's business and improve their own, thereby warranting an award of exemplary damages, as provided by Civil Code § 3426.3(c) and an award of reasonable attorneys' fees as provided by Civil Code § 3426.4.

68.     Unless restrained, the INDIVIDUAL DEFENDANTS will continue to engage in the acts, conduct and omissions set forth above which have resulted and will continue to result in irreparable injury to SURFWARE.  The exact extent, nature and amount of SURFWARE's injuries and damages are extremely difficult to ascertain.  The continuing acts, conduct and omissions by the INDIVIDUAL DEFENDANTS may also cause a multiplicity of suits by SURFWARE.  Monetary damages alone do not offer an adequate remedy.  SURFWARE therefore requests that during the pendency of this action, this Court issue a preliminary injunction, and that after trial, this Court issue a permanent injunction, restraining and enjoining the INDIVIDUAL DEFENDANTS and their agents, employees, attorneys and representatives and anyone acting at their direction or on their behalf from using SURFWARE's confidential and proprietary information.

### THIRD CAUSE OF ACTION
### (Violation of Civil Code §§3226-3426.11—
### Misappropriation of Trade Secrets; Against All Defendants)

69.   SURFWARE hereby incorporates by reference Paragraphs 1 through 68 as though fully set forth herein.

70.   SURFWARE is informed and believes that DEFENDANTS have misappropriated SURFWARE's trade secrets and confidential and proprietary information for the benefit of themselves and to gain an unfair competitive advantage.

71.   SURFWARE has developed and used trade secrets consisting of proprietary information including, but not limited to, the source codes that power TrueMill® machining software and SURFWARE's customer lists.

72.   Prior to DEFENDANTS' acts complained of herein, SURFWARE's trade secret and confidential information, including its proprietary technology, confidential product development and customer information, including, names, addresses, contact persons, preferences, pricing information and contract expiration/renewal dates for SURFWARE's vendors, distributors and end users have an independent economic value from not being generally known within the industry, not readily ascertainable by proper means, and representing many years of development effort and expense by SURFWARE.

73.   SURFWARE has taken reasonable efforts to maintain the confidentiality of said trade secrets and protect them from disclosure to its competitors or potential competitors. SURFWARE has required that its employees sign agreements expressly guaranteeing the protection of confidential, proprietary and trade secret information. The INDIVIDUAL DEFENDANTS knew and understood that SURFWARE sought to protect the confidentiality of its trade secret information.

74.   On information and belief, before the INDIVIDUAL DEFENDANTS were terminated or resigned from SURFWARE, they misappropriated SURFWARE's trade secrets by surreptitiously absconding with confidential information related to

SURFWARE's TrueMill® machining software, including, but not limited to the source codes and any related proprietary software or system tools for the purpose of attaining an unfair competitive advantage.

75.   DEFENDANTS knew that the information they misappropriated from SURFWARE was SURFWARE's confidential and constituted trade secrets. DEFENDANTS knew that they acquired the trade secrets by improper means from SURFWARE in violation of their confidentiality agreements and the obligations implied by law, and that they accessed and used the trade secrets without SURFWARE's express or implied consent.

76.   As a direct and proximate result of the misappropriation by DEFENDANTS of SURFWARE's trade secrets, as described herein, SURFWARE has suffered substantial damages and lost profits, in particular with respect to large aerospace companies.   These substantial damages represent significant monetary damages already sustained as well as anticipated large future sales.   SURFWARE is entitled to lost profits suffered as a result of this conduct in an amount to be determined at trial and the costs and fees of prosecuting this action. DEFENDANTS should forfeit income and profits derived as a result of such misappropriation of trade secrets.

77.   The exact amount of SURFWARE's damages is presently unascertainable and continuing to accrue.   SURFWARE will prove the exact amount and nature of these damages at the time of trial.

78.   DEFENDANTS' acts described above were willful, wanton, malicious and oppressive in that DEFENDANTS misappropriated SURFWARE's trade secrets with the deliberate intent to injure SURFWARE's business and improve their own, thereby warranting an award of exemplary damages, as provided by Civil Code § 3426.3(c) and an award of reasonable attorneys' fees as provided by Civil Code § 3426.4.

## FOURTH CAUSE OF ACTION
### (Interference with Contractual Relations; Against All Defendants)

79.     SURFWARE hereby incorporates by reference Paragraphs 1 through 78 as though fully set forth herein.

80.     SURFWARE enjoys contractual relationships with its customers, of which DEFENDANTS are aware.

81.     SURFWARE is informed and believes, and on that basis alleges, that DEFENDANTS through improper means and for the purpose of injuring SURFWARE, have interfered with, and continue to attempt to interfere with, contractual relationships between SURFWARE and its customers.  Such interference has, in fact, resulted in a disruption to such contractual relationships.

82.     On information and belief, DEFENDANTS have targeted SURFWARE for the purpose of wrongfully, unlawfully and intentionally pirating its software and other trade secrets so as to divert customers to DEFENDANTS.  On information and belief, SURFWARE alleges that such wrongful, unlawful and intentional conduct is done for the purpose of expanding DEFENDANTS' business at the expense of SURFWARE.

83.     As a proximate result of DEFENDANTS' conduct, SURFWARE has lost and will continue to lose business which would have been generated from its existing contractual relationships with its customers, as well as additional, substantial damages.  The exact amount of SURFWARE's damages is presently unascertainable and continuing to accrue.  SURFWARE will prove the exact amount and nature of these damages at the time of trial.

84.     SURFWARE is entitled to lost profits suffered as a result of DEFENDANTS' conduct in an amount to be determined at trial and the costs and fees of prosecuting this action.  DEFENDANTS should forfeit income and profits derived as a result of this intentional interference.

85.   DEFENDANTS performed the foregoing acts, conduct and omissions fraudulently, maliciously and oppressively, with the specific intent to deprive SURFWARE of its lawful rights to its proprietary and confidential information and to otherwise cause injury to SURFWARE.   By reason of the INDIVIDUAL DEFENDANTS' conduct, SURFWARE is entitled to an award of punitive damages, according to proof at trial.

86.   Unless restrained, DEFENDANTS will continue to engage in the acts, conduct and omissions set forth above which have resulted and will continue to result in irreparable injury to SURFWARE.   The exact extent, nature and amount of SURFWARE's injuries and damages are extremely difficult to ascertain.   The continuing acts, conduct and omissions by DEFENDANTS may also cause a multiplicity of suits by SURFWARE.   Monetary damages alone do not offer an adequate remedy.   SURFWARE therefore requests that during the pendency of this action, this Court issue a preliminary injunction, and that after trial, this Court issue a permanent injunction, restraining and enjoining DEFENDANTS, and anyone acting at their direction, with their assistance or on their behalf from using SURFWARE's confidential and proprietary information.

## FIFTH CAUSE OF ACTION
### (Interference with Prospective Economic Advantage; Against All Defendants)

87.   SURFWARE hereby incorporates by reference Paragraphs 1 through 86 as though fully set forth herein.

88.   SURFWARE enjoys beneficial economic relationships with its customers, of which DEFENDANTS are aware.   SURFWARE had developed business relationships with their customers, providing ongoing services to them with a reasonable expectation of continuing to do so. By virtue of these relationships, SURFWARE also developed a reasonable expectation of future referrals of additional customers from these customers.

Case Name:  Surfware, Inc. vs.                     23                     COMPLAINT FOR DAMAGES
                 Celeritive Technologies, Inc., et al.

Case No:

89.    SURFWARE is informed and believes that DEFENDANTS are wrongfully, unlawfully and intentionally interfering with SURFWARE's business relationships with its customers and, by doing so, with its prospective economic advantage.

90.    On information and belief, DEFENDANTS have targeted SURFWARE for the purpose of wrongfully, unlawfully and intentionally obtaining and usurping its software and other trade secrets to divert customers to DEFENDANTS. On information and belief, SURFWARE alleges that such wrongful, unlawful and intentional conduct is done for the purpose of expanding DEFENDANTS' business at the expense of SURFWARE.

91.    On information and belief, DEFENDANTS have engaged in multiple instances of wrongful conduct in furtherance of their efforts to interfere with SURFWARE's prospective economic advantage as alleged herein. Such wrongful conduct includes, but is not limited to:  DEFENDANTS' misappropriation of SURFWARE's trade secret and confidential software by DEFENDANTS and application of that software to compete with SURFWARE.

92.    SURFWARE had also developed profitable business relationships with their employees, earning revenues and profits as a result of their ability to assign those employees to fill their customers' needs, and reasonably expecting to continue to do so.

93.    DEFENDANTS improperly solicited these customers and employees of SURFWARE to terminate their relationship with SURFWARE.

94.    By improperly soliciting SURFWARE's customers and employees to terminate their relationships with SURFWARE, DEFENDANTS tortiously interfered with the prospective economic advantage SURFWARE anticipated enjoying from those customers and employees, as well as potential customers and employees those customers and employees may refer.

95.   DEFENDANTS did so improperly in breach of their contractual obligation to SURFWARE as well as their statutory obligations to refrain from misappropriating SURFWARE's trade secrets.

96.   DEFENDANTS' conduct in improperly soliciting SURFWARE customers and employees to terminate their relationships with SURFWARE, and thereby tortiously interfering with the economic advantage SURFWARE reasonably expected to enjoy from, and as a result of, those relationships, was malicious, fraudulent, and/or oppressive, entitling SURFWARE to an award of exemplar damages against them.

97.   SURFWARE is informed and believe that DEFENDANTS are wrongfully, unlawfully and intentionally interfering with SURFWARE's business relationships with its customers and employees and, by doing so, with their prospective economic advantage.

98.   On information and belief, DEFENDANTS targeted SURFWARE for the purpose of wrongfully, unlawfully and intentionally raiding their employees so as to divert SURFWARE customers and reduce the number of competent, experienced and knowledgeable people at SURFWARE so as to keep it from properly servicing existing and future customers.  On information and belief, DEFENDANTS targeted SURFWARE'S customers and potential customers for the purpose of wrongfully, unlawfully and intentionally interfering with SURFWARE's business relationships.

99.   SORENSEN breached his agreement while still employed by SURFWARE by encouraging and soliciting SURFWARE employees to quit their employment and join CELERITIVE.

100.  The INDIVIDUAL DEFENDANTS breached their agreements while they were still employed by SURFWARE by soliciting business from SURFWARE customers even while they were still employed by SURFWARE.

101.  On information and belief, DEFENDANTS have engaged in multiple instances of wrongful conduct in furtherance of their efforts to interfere with

SURFWARE's prospective advantage as alleged herein.   Such wrongful conduct includes, but is not limited to:

>    (a)    INDIVIDUAL DEFENDANT's breach of their contractual and fiduciary obligations to SURFWARE;

>    (b)    DEFENDANTS' misappropriation of SURFWARE's confidential, proprietary and trade secret information;

102.   As a proximate result of the foregoing alleged conduct, SURFWARE has lost and will continue to lose business which would have been generated from its existing relationships with its customers, and has lost and will continue to lose the actual and prospective economic advantage that it enjoys through its relationships with its customers and employees.

103.   SURFWARE is entitled to lost profits suffered as a result of the foregoing alleged conduct in an amount to be determined at trial and the costs and fees of prosecuting this action.   The INDIVIDUAL DEFENDANTS and each of them, should forfeit their salary and bonuses that were paid and/or which may become payable as a result of their respective employment with CELERITIVE.   The INDIVIDUAL DEFENDANTS should forfeit income and profits derived as a result of these wrongful acts.

104.   As a direct and proximate result of DEFENDANTS' conduct, SURFWARE has suffered substantial damages.   The exact amount of SURFWARE's damages is presently unascertainable and continuing to accrue.   SURFWARE will prove the exact amount and nature of these damages at the time of trial.

105.   DEFENDANTS performed the foregoing acts, conduct and omissions fraudulently, maliciously and oppressively, with the specific intent to deprive SURFWARE of its lawful rights to its proprietary and confidential information and to otherwise cause injury to SURFWARE.   By reason of the DEFENDANTS' conduct, SURFWARE is entitled to an award of punitive damages, according to proof at trial.

## SIXTH CAUSE OF ACTION
### (Fraud and Deceit - Civil Code §1572);
### Against The Individual Defendants)

106.   SURFWARE hereby incorporates by reference Paragraphs 1 through 106 as though fully set forth herein.

107.   The INDIVIDUAL DEFENDANTS, acting for their own personal gain and self-interest, knowingly and with the intent to suppress the fact that they were doing so, accessed SURFWARE's protected computer(s) without SURFWARE's authorization and/or exceeded authorization, and obtained valuable TrueMill® machining software source codes and other trade secret and proprietary, confidential information.   The INDIVIDUAL DEFENDANTS willfully suppressed their disloyal conduct from SURFWARE.

108.   The INDIVIDUAL DEFENDANTS, acting for their own personal gain and self-interest and without SURFWARE's authorization and/or exceeded authorization, misappropriated SURFWARE's trade secret information stored on SURFWARE's computer system and improperly used such information to unfairly compete with SURFWARE.   DEFENDANTS willfully suppressed their disloyal conduct from SURFWARE.

109.   The INDIVIDUAL DEFENDANTS, acting for their own personal gain and self-interest, knowingly and with intent to suppress and defraud, transferred and/or obtained control of valuable TrueMill® machining software source codes and other trade secret and proprietary, confidential information stored on SURFWARE's computer(s) without authorization and/or exceeded the authorization for their access.

110.   The INDIVIDUAL DEFENDANTS did in fact suppress the information and defraud SURFWARE in connection with their obtaining control of confidential and proprietary trade secret information.

111.   On information and belief, the INDIVIDUAL DEFENDANTS, prior to their separation of employment from SURFWARE, did engage in the acts set forth

Case Name:  Surfware, Inc. vs.
          Celeritive Technologies, Inc., et al.

Case No:

27

COMPLAINT FOR DAMAGES

hereinabove for the purpose of maliciously, wrongfully, unfairly and illegally competing with SURFWARE.

112.  As a result of the INDIVIDUAL DEFENDANTS improperly accessing SURFWARE's computers without appropriate authorization and/or exceeding authorization, SURFWARE has suffered substantial damages. The exact amount of SURFWARE's damages is presently unascertainable and continuing to accrue. SURFWARE will prove the exact amount and nature of these damages at the time of trial.

113.  As a direct and proximate result of the INDIVIDUAL DEFENDANTS' violation of Civil Code §1572, SURFWARE has suffered substantial damages. SURFWARE is entitled to lost profits suffered as a result of the INDIVIDUAL DEFENDANTS' conduct in an amount to be determined at trial and the costs and attorney's fees incurred in prosecuting this action. DEFENDANTS should forfeit income and profits derived from their wrongful, unfair and illegal conduct.

114.  The INDIVIDUAL DEFENDANTS performed the foregoing acts, conduct and omissions fraudulently, maliciously and oppressively, with the specific intent to deprive SURFWARE of its lawful rights to its proprietary and confidential information and to otherwise cause injury to SURFWARE.  By reason of the INDIVIDUAL DEFENDANTS' conduct, SURFWARE is entitled to an award of punitive damages, according to proof at trial.

115.  Unless restrained, DEFENDANTS will continue to engage in the acts, conduct and omissions set forth above which have resulted and will continue to result in irreparable injury to SURFWARE.  The exact extent, nature and amount of SURFWARE's injuries and damages are extremely difficult to ascertain.  The continuing acts, conduct and omissions by DEFENDANTS may also cause a multiplicity of suits by SURFWARE.  Monetary damages alone do not offer an adequate remedy.  SURFWARE therefore requests that during the pendency of this

Case Name:  Surfware, Inc. vs.                    28                    COMPLAINT FOR DAMAGES
            Celeritive Technologies, Inc., et al.

Case No:

action, this Court issue a preliminary injunction, and that after trial, this Court issue a permanent injunction, restraining and enjoining DEFENDANTS and their agents, employees, attorneys and representatives and anyone acting at their direction or on their behalf from using SURFWARE's confidential and proprietary information.

## SEVENTH CAUSE OF ACTION
### (Interference With Employment Contract);
### Against Celeritive and Individual Defendant Sorensen)

116.   SURFWARE hereby incorporates by reference Paragraphs 1 through 115 as though fully set forth herein.

117.   SURFWARE is informed and believes that SORENSEN, both during and after being employed by SURFWARE, solicited and induced COLEMAN and SHERBROOKE to resign from SURFWARE and carry out their long standing plan to form a company to unfairly compete with SURFWARE.   Both COLEMAN and SHERBROOKE had been employed by SURFWARE for years prior to SORENSEN joining SURFWARE.   However, after SORENSEN was hired, he began inducing COLEMAN and SHERBROOKE to form a company which directly and unfairly competes with SURFWARE.

118.   Once formed, CELERITIVE also unlawfully solicited another former long-term SURFWARE employee, Joe McChesney.   SURFWARE is informed and believes while Joe McChesney was still employed with SURFWARE, SHERBROOKE manipulated him into gaining access to SURFWARE's computer system without authorization and/or in excess of authorization in to misappropriate SURFWARE'S source codes for the benefit of DEFENDANTS while pretending to provide support and assistance to SURFWARE software developers.

119.   SORENSEN committed and engaged in independent wrongful acts to solicit and induce COLEMAN and SHERBROOKE to form and/or join what would become the competing company, CELERITIVE, including, but not limited, misappropriating trade secrets and other confidential and proprietary information,

Case Name:  Surfware, Inc. vs.
              Celeritive Technologies, Inc., et al.

Case No:                                      29                    COMPLAINT FOR DAMAGES

1   improperly and unlawfully accessing SURFWARE's computers and engaging in unfair
2   competition.

3       120.   SORENSEN improperly used unfair and deceptive means to solicit, induce
4   and hire COLEMAN and SHERBROOKE with the intent to interfere with
5   SURFWARE's prospective economic advantage by misappropriating trade secrets and
6   other confidential information and engaging in unfair competition.

7       121.   SORENSEN breached his contractual duties to SURFWARE by refusing to
8   perform the terms and conditions thereof, knowing full well that his active participation
9   as CEO and President was a material part of the compensation paid to him, by taking
10  steps to form CELERITIVE while he was still employed with SURFWARE, by
11  soliciting or accepting business from SURFWARE's customers, by soliciting
12  employment from SURFWARE's employees, encouraging and/or inducing
13  SURFWARE's employees to leave SURFWARE and join a competing company, and
14  by using the proprietary and confidential information made available to him as CEO and
15  President to assist COLEMAN AND SHERBROOKE in competing directly with
16  SURFWARE. CELERITIVE was formally incorporated on April 26, 2007.

17      122.   In his improper and unfair use of deceptive means to solicit, induce and
18  hire COLEMAN and SHERBROOKE, SORENSEN breached his employment
19  agreement, which prohibited him from soliciting or inducing any employee of
20  SURFWARE to terminate employment with SURFWARE. (Sorensen Employment
21  Agreement, Section 11).

22      123.   As a direct and proximate result of the INDIVIDUAL DEFENDANTS'
23  conduct, SURFWARE has suffered substantial damages.  SURFWARE is entitled to
24  lost profits suffered as a result of the INDIVIDUAL DEFENDANTS' conduct in an
25  amount to be determined at trial and the costs and fees of prosecuting this action.
26  DEFENDANTS should forfeit income and profits resulting from their unlawful conduct.

27
28

Case Name:  Surfware, Inc. vs.                    30                COMPLAINT FOR DAMAGES
          Celeritive Technologies, Inc., et al.

Case No:

124.   The exact amount of SURFWARE's damages is presently unascertainable and continuing to accrue.  SURFWARE will prove the exact amount and nature of these damages at the time of trial.

125.   The INDIVIDUAL DEFENDANTS performed the foregoing acts, conduct and omissions fraudulently, maliciously and oppressively, with the specific intent to deprive SURFWARE of its lawful rights to its proprietary and confidential information and to otherwise cause injury to SURFWARE.   By reason of the INDIVIDUAL DEFENDANTS' conduct, SURFWARE is entitled to an award of punitive damages, according to proof at trial.

### EIGHTH CAUSE OF ACTION
#### (Breach of Written Contract;
#### Against The Individual Defendants)

126.   SURFWARE hereby incorporates by reference Paragraphs 1 through 125 as though fully set forth herein.

127.   The   INDIVIDUAL   DEFENDANTS   owed   contractual   duties   to SURFWARE.   Each   INDIVIDUAL   DEFENDANT   signed   written   Inventions Agreements and other written agreements in which they agreed that both during and after their employment with Surfware to maintain the confidentiality of Surfware's proprietary and trade secret information.  The INDIVIDUAL DEFENDANTS breached their contractual duties to SURFWARE by using confidential and proprietary trade secret information acquired at Surfware to wrongfully compete against SURFWARE for their own personal gain and benefit.

128.   Each INDIVIDUAL DEFENDANT signed the following sections of the Inventions Agreement:

> I will not disclose or use at any time, either during or after my employment with Surfware, any Confidential Information except for the exclusive benefit of Surfware as required by my duties for Surfware, or as Surfware expressly may consent to in writing.  I

will cooperate with Surfware and use my best efforts to prevent the unauthorized disclosure, use, or reproduction or any or all Confidential Information. (Inventions Agreement, Section 1(c)).

\* \* \* \*

I agree to communicate to Surfware as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment with Surfware. (Inventions Agreement, Section 2(a)).

\* \* \* \*

. . .during my employment with Software, I will not, without Surfware's express written consent, engage in any employment or business other than for Surfware, or invest in or assist (in any manner) any business competitive with the business of the future business plans of Surfware, other than small passive interests in publically traded companies. (Inventions Agreement, Section 3(a)).

129. SORENSEN agreed in Section 2 of his Employment Agreement to the following:

You acknowledge that upon commencement of your employment, you will owe a duty of loyalty to Surfware and that all of your services shall be performed conscientiously and to the fullest extent of your abilities. You will not engage or participate in any business that is competitive with the business of Surfware. You will be expected to comply with and be bound by Surfware's operating policies, procedures and practices. (Sorensen Employment Agreement, Section 2).

Case Name:  Surfware, Inc. vs.
           Celeritive Technologies, Inc., et al.

Case No:                              32                    COMPLAINT FOR DAMAGES

130. SORENSEN agreed in Section 11 of this Employment Agreement to the following:

> During the term of this Agreement and for one year thereafter, you will not, on your own behalf or on behalf of any third party, solicit or induce any employee of SURFWARE to terminate employment with SURFWARE. (Sorensen Employment Agreement, Section 11).

131. OLEMAN and SHERBROOKE agreed in their Mutual Non-Disclosure Agreements ("NDA") with SURFWARE to the following:

> The Receiving Party understands and agrees that it is not allowed to sell, license, develop or otherwise exploit any parts, products, services, documents or information which embody in whole or in part any Confidential Information. (NDA, Section 5).

132. The INDIVIDUAL DEFENDANTS knew at all times during their employment with SURFWARE that they were obligated, as material terms and conditions of the compensation paid to them by SURFWARE, to act exclusively in the interests of SURFWARE for so long as they remained employed there and to honor the terms of the written agreements described hereinabove.

133. The INDIVIDUAL DEFENDANTS breached their contractual duties to SURFWARE by refusing to perform the terms and conditions of their employment agreements. Specifically, the INDIVIDUAL DEFENDANTS, while still employed at SURFWARE planned to: (1) create a competing entity later to be called "CELERITIVE" and began working as agents of this entity in violation of their obligations to SURFWARE; (2) solicit and induce SURFWARE's employees to resign from their employment with SURFWARE and join CELERITIVE; and (3) use the proprietary and confidential information made available to them in strict confidence in their capacities of executive vice presidents and CEO and President of SURFWARE to

assist CELERTIVE in competing directly with SURFWARE.   CELERITIVE was formally incorporated on April 26, 2007.

134.   As a proximate result of the INDIVIDUAL DEFENDANTS' breaches of their contracts, SURFWARE has suffered substantial damages in a sum which is presently unascertainable and continuing to accrue.  SURFWARE will present evidence of the exact amount and nature of these damages at the time of trial.

**NINTH CAUSE OF ACTION**
**(Breach of Covenant of Good Faith and Fair Dealing;**
**Against The Individual Defendants)**

135.   SURFWARE hereby incorporates by reference Paragraphs 1 through 134 as though fully set forth herein.

136.   The Agreements described above, respectively, constitute valid and binding contracts between the INDIVIDUAL DEFENDANTS and SURFWARE.  Implied by law into each of these agreements is a covenant of good faith and fair dealing which prohibited the INDIVIDUAL DEFENDANTS from engaging in any actions that would deprive SURFWARE of the benefits of its agreements with the INDIVIDUAL DEFENDANTS.

137.   The INDIVIDUAL DEFENDANTS violated their covenants of good faith and fair dealing by taking actions designed to deprive SURFWARE of the benefits that they bargained for in entering into the written agreements with the INDIVIDUAL DEFENDANTS.

138.   Specifically, whether or not such actions constitute a breach of the INDIVIDUAL DEFENDANTS contractual obligations to SURFWARE, INDIVIDUAL DEFENDANTS refused to perform their obligations to SURFWARE for the purpose of depriving SURFWARE of the benefits of its agreements with them, and used proprietary and confidential information made available to INDIVIDUAL DEFENDANTS as executive vice president and CEO and President to assist CELERITIVE in competing directly with SURFWARE.

Case Name:  Surfware, Inc. vs.
            Celeritive Technologies, Inc., et al.
Case No:

34

COMPLAINT FOR DAMAGES

139.   As a proximate result of the INDIVIDUAL DEFENDANTS' breach of their covenants of good faith and fair dealing, SURFWARE has suffered substantial damages.   SURFWARE is entitled to lost profits suffered as a result of the INDIVIDUAL DEFENDANTS' breaches in an amount to be determined at trial and for the costs and fees incurred in prosecuting this action.

140.   The exact amount of SURFWARE's damages is presently unascertainable and continuing to accrue.   SURFWARE will prove the exact amount and nature of these damages at the time of trial.

### TENTH CAUSE OF ACTION
#### (Breach of Fiduciary Duty;
#### Against The Individual Defendants)

141.   SURFWARE hereby incorporates by reference Paragraphs 1 through 140 as though fully set forth herein.

142.   As officers of SURFWARE, the INDIVIDUAL DEFENDANTS owed fiduciary duties to SURFWARE to act at all times in the interests of SURFWARE, to always prefer the interests to SURFWARE to their own self-interest, and to refrain from engaging in any conduct that would work injury to the corporation or deprive it of opportunities.

143.   The INDIVIDUAL DEFENDANTS breached their fiduciary duties to SURFWARE by planning to create and creating a business entity that directly competed and continues to compete with SURFWARE; using the proprietary and confidential information made available to them as employees and officers of SURFWARE to usurp SURFWARE's corporate opportunities and to unfairly and directly compete with SURFWARE; gaining access to and misappropriating SURFWARE's source codes and client lists in order to use such information for their own personal gain and profit to the injury of SURFWARE; and inducing the other two INDIVIDUAL DEFENDANTS to resign from their employment at SURFWARE and to join CELERTIVE.   All of the

foregoing acts were committed while the INDIVIDUAL DEFENDANTS were employed at SURFWARE and bound by their fiduciary obligations to their employer.

144.   As a proximate result of the INDIVIDUAL DEFENDANTS' breaches of their fiduciary duties to SURFWARE, SURFWARE has suffered substantial damages. The exact amount of SURFWARE's damages as a result of the INDIVIDUAL DEFENDANTS' conduct as alleged herein, is presently unascertainable and continuing to accrue.  SURFWARE will prove the exact amount and nature of these damages at the time of trial.

145.   SURFWARE is entitled to lost profits suffered as a result of the INDIVIDUAL DEFENDANTS' breaches in an amount to be determined at trial, and for the costs and fees incurred in prosecuting this action. DEFENDANTS also should forfeit any and all compensation or economic benefit of any type that they received from SURFWARE during the period of their disloyalty and breaches of fiduciary duty as described hereinabove.

146.   The INDIVIDUAL DEFENDANTS performed the foregoing acts, conduct and omissions fraudulently, maliciously and oppressively, with the specific intent to deprive SURFWARE of its lawful rights to its proprietary and confidential information and to otherwise cause injury to SURFWARE.   By reason of the INDIVIDUAL DEFENDANTS' conduct, SURFWARE is entitled to an award of punitive damages, according to proof at trial.

## ELEVENTH CAUSE OF ACTION
### (Breach of Duty of Loyalty;
### Against The Individual Defendants)

147.   SURFWARE hereby incorporates by reference Paragraphs 1 through 146 as though fully set forth herein.

148.   As employees of SURFWARE, the INDIVIDUAL DEFENDANTS owed a duty of loyalty to SURFWARE to act at all times in the interests of SURFWARE, to always prefer the interests to SURFWARE to their own self-interest, and to refrain from

1  engaging in any conduct that would work injury to the corporation or deprive it of
2  opportunities.

3      149.   The INDIVIDUAL DEFENDANTS breached their duty of loyalty to
4  SURFWARE by planning to create and creating a business entity that directly competed
5  and continues to compete with SURFWARE; using the proprietary and confidential
6  information made available to them as employees and officers of SURFWARE to usurp
7  SURFWARE's corporate opportunities and to unfairly and directly compete with
8  SURFWARE; gaining access to and misappropriating SURFWARE's source codes and
9  client lists in order to use such information for their own personal gain and profit to the
10 injury of SURFWARE; and inducing the other two INDIVIDUAL DEFENDANTS to
11 resign from their employment at SURFWARE and to join CELERTIVE. All of the
12 foregoing acts were committed while the INDIVIDUAL DEFENDANTS were
13 employed at SURFWARE and bound by their duty of loyalty to their employer.

14     150.   As a proximate result of the INDIVIDUAL DEFENDANTS' breaches of
15 their duty of loyalty to SURFWARE, SURFWARE has suffered substantial damages.
16 The exact amount of SURFWARE's damages as a result of the INDIVIDUAL
17 DEFENDANTS' conduct as alleged herein, is presently unascertainable and continuing
18 to accrue.  SURFWARE will prove the exact amount and nature of these damages at the
19 time of trial.

20     151.   SURFWARE is entitled to lost profits suffered as a result of the
21 INDIVIDUAL DEFENDANTS' breaches in an amount to be determined at trial, and for
22 the costs and fees incurred in prosecuting this action.   The INDIVIDUAL
23 DEFENDANTS also should forfeit any and all compensation or economic benefit of
24 any type that they received from SURFWARE during the period of their disloyalty and
25 breaches of fiduciary duty as described hereinabove.

26     152.   The INDIVIDUAL DEFENDANTS performed the foregoing acts, conduct
27 and omissions fraudulently, maliciously and oppressively, with the specific intent to

28

deprive SURFWARE of its lawful rights to its proprietary and confidential information and to otherwise cause injury to SURFWARE. By reason of the INDIVIDUAL DEFENDANTS' conduct, SURFWARE is entitled to an award of punitive damages, according to proof at trial.

## TWELFTH CAUSE OF ACTION
### (Violation of Business and Professions Code §17500 et seq. — Untrue and Misleading Advertising; Against All Defendants)

153. SURFWARE hereby incorporates by reference Paragraphs 1 through 152 as though fully set forth herein.

154. California's False Advertising law (Bus. & Prof. Code §§ 17500, et seq.) makes it unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

155. CELERITIVE and COLEMAN have published to members of the public in this state, in their advertising, including articles in industry publications and over the Internet, statements concerning COLEMAN's role in the development of TrueMill® machining software.

156. On information and belief, the statements were published with the knowledge, consent and authorization of all DEFENDANTS.

157. The statements were false and misleading. The statements were intended to and have confused and misled SURFWARE's customers and potential customers about the ownership of SURFWARE's proprietary technologies.

158. DEFENDANTS knew, or with the exercise of reasonable care should have known, that the statements were false and misleading.

159. DEFENDANTS' actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

160. As a direct and proximate result of these acts, Defendants have been and will be unjustly enriched at the expense of SURFWARE and the general public.

161. Pursuant to Business & Professions Code § 17535 SURFWARE seeks an order awarding restitution of all monies wrongfully acquired by DEFENDANTS by means of their false statements, plus interest and attorneys fees pursuant to, *inter alia*, Code of Civil Procedure § 1021.5.

162. Unless restrained, DEFENDANTS will continue to engage in the acts, conduct and omissions set forth above which have resulted and will continue to result in irreparable injury to SURFWARE and the general public. SURFWARE therefore seeks injunctive relief to enjoin the practices described herein.

### THIRTEENTH CAUSE OF ACTION
#### (Violation of Business and Professions Code §17200— Unfair Business Practices; Against All Defendants)

163. SURFWARE hereby incorporates by reference Paragraphs 1 through 162 as though fully set forth herein.

164. The acts and practices of DEFENDANTS as alleged herein constitute unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business & Professions Code § 17200, *et seq*.

165. DEFENDANTS engaged in "unlawful" business acts and practices by misappropriating SURFWARE's trade secret and confidential information to gain a competitive advantage over SURFWARE; by the INDIVIDUAL DEFENDANTS' breaches of their duties of loyalty and fiduciary duties as hereinabove described; by interfering with SURFWARE's contractual relations with its customers; by soliciting SURFWARE's employees; by publishing misleading articles misstating COLEMAN's role in the development of TrueMill® machining software which have misled the

general public; and, on information and belief, engaging in other unfair and deceptive acts in violation of Section 17200. SURFWARE reserves the right to allege other violations of law which constitute unlawful acts or practices. Such conduct is ongoing and continues to this date.

166. DEFENDANTS also engaged in a "fraudulent" business act or practice in that the representations and omissions described herein are false and/or likely to deceive potential and current customers.

167. DEFENDANTS also engaged in "unfair" business acts or practices in that the harm caused by DEFENDANTS' conduct outweighs any utility of such conduct and such conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, and causes substantial injury to consumers.

168. The aforementioned unlawful, fraudulent, and unfair business acts or practices conducted by DEFENDANTS still continue to this day. DEFENDANTS have failed to publicly acknowledge the wrongful nature of their actions and have not corrected the advertisements.

169. Defendants' wrongful conduct adversely impacts the public interest.

170. As a direct and proximate result of DEFENDANTS' violation of California Business and Professions Code §§ 17200 *et seq.*, SURFWARE has suffered substantial damages.

171. SURFWARE requests that the court enter such orders as may be necessary to restore to SURFWARE all sums which DEFENDANTS wrongfully acquired by means of unlawful, unfair and fraudulent conduct, as provided in Business & Professions Code §17203, Civil Code §3345, and for other appropriate relief.

### FOURTEENTH CAUSE OF ACTION
#### (Civil Conspiracy;
#### Against All Defendants)

172. SURFWARE hereby incorporates by reference Paragraphs 1 through 171 as though fully set forth herein.

Case Name: Surfware, Inc. vs.
            Celeritive Technologies, Inc., et al.

Case No:

40                    COMPLAINT FOR DAMAGES

173.   The INDIVIDUAL DEFENDANTS had an agreement to breach their duties of loyalty and fiduciary duties to SURFWARE as more fully described above.  In committing the acts set forth hereinabove, the INDIVIDUAL DEFENDANTS were at all times acting for their own personal gain and benefit, not for SURFWARE's benefit and not in the course and scope of their employment with SURFARE.

174.   DEFENDANTS agreed to interfere with SURFWARE's contractual relations with its employees and customers; to interfere with SURFWARE's prospective economic advantage with its customers; to commit fraud against SURFWARE by accessing SURFWARE's computer system to steal its proprietary source codes and other confidential information as hereinabove described in order to gain an unfair competitive advantage.

175.   DEFENDANTS agreed to engage in unfair business practices in violation of California Business and Professions Code § 17200 and false and deceptive advertising in violation of California Business and Professions Code § 17500 *et seq.*, as is more fully set forth above.

176.   As a proximate result of the DEFENDANTS' conduct, SURFWARE has suffered substantial damages.  The exact amount of SURFWARE's damages as a result of the INDIVIDUAL DEFENDANTS' conduct as alleged herein, is presently unascertainable and continuing to accrue.  SURFWARE will prove the exact amount and nature of these damages at the time of trial.

177.   SURFWARE is entitled to lost profits suffered as a result of the DEFENDANTS' conduct in an amount to be determined at trial, and for the costs and fees incurred in prosecuting this action. DEFENDANTS also should forfeit any and all compensation or economic benefit of any type that they received from SURFWARE during the period of their disloyalty and breaches of fiduciary duty as described hereinabove.

178.   The DEFENDANTS performed the foregoing acts, conduct and omissions fraudulently, maliciously and oppressively, with the specific intent to deprive SURFWARE of its lawful rights to its proprietary and confidential information and to otherwise cause injury to SURFWARE.   By reason of the INDIVIDUAL DEFENDANTS' conduct, SURFWARE is entitled to an award of punitive damages, according to proof at trial.

## PRAYER FOR RELIEF

NOW, THEREFORE, Plaintiff SURFWARE PRAYS FOR RELIEF AS FOLLOWS:

1.   For preliminary and permanent injunctive relief;

2.   For damages according to proof;

3.   For an order of restitution by all Defendants of all sums improperly obtained; For an order requiring the Individual Defendants to disgorge all compensation they received from SURFWARE during the period of their disloyalty and breaches of fiduciary duty;

4.   For an order enjoining all Defendants from engaging in unfair, unlawful and/or fraudulent business practices, including, without limitation, misappropriating and/or utilizing SURFWARE's confidential and proprietary information;

5.   For an order prohibiting Defendants' unfair and fraudulent business practices and false and misleading statements;

6.   For punitive damages according to proof as all but the First, Eighth, Ninth, Twelfth and Thirteenth Causes of Action;

7.   For prejudgment interest;

8.   For reasonable attorneys fees and costs of suit; and

9.   For such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff SURFWARE, INC. respectfully demands a jury trial.

Dated:  October 14, 2008                    JACKSON LEWIS LLP

By: _____

Joel P. Kelly
Nicky Jatana
Dawn T. Collins
Talya Friedman

Attorneys for Plaintiff
SURFWARE, INC.

Dated:  October 14, 2008                    WENNERGREN LAW OFFICES, APC

By: _____

Kenneth H. Wennergren

Attorneys for Plaintiff
SURFWARE, INC.

Case Name:  Surfware, Inc. vs.                    43                    COMPLAINT FOR DAMAGES
                   Celeritive Technologies, Inc., et al.
Case No:

**EXHIBIT  A**

## SURFWARE, INC.
### NEW EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Surfware, Inc. ("Surfware") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of Surfware's Confidential Information; (ii) I will use Surfware's Confidential Information for the exclusive benefit of Surfware; (iii) inventions that I create will be owned by Surfware; (iv) my prior and continuing activities separate from Surfware will not conflict with Surfware's development of its Confidential rights; and (v) when and if my employment with Surfware terminates I will not use Surfware's Confidential Information to the detriment of Surfware. In consideration of my employment by Surfware and other good and valuable consideration associated with my employment by Surfware, I agree:

1. Provisions Related to Confidential Information. ·

(a) I acknowledge that Surfware possesses and will continue to develop and acquire valuable Confidential Information (as defined below), including information that I may develop or discover as a result of my employment with Surfware. The value of that Confidential Information depends on it remaining confidential. Surfware depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Confidential Information" means any information (including any ideas, concepts, knowhow, structures, information, formula, algorithm, pattern, compilation, device, method, technique, process or materials) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information of Surfware, its customers, suppliers, joint venturers, licensors, licensees, distributors and other persons and entities with whom Surfware does business. Confidential Information includes, without limitation, customer and employee lists, Confidential Company source code and other software, sales and marketing plans, product development plans, schedules, pricing information, third party confidential information, and other data identified to me as Confidential Information from time to time.

(c) I will not disclose or use at any time, either during or after my employment with Surfware, any Confidential Information except for the exclusive benefit of Surfware as required by my duties for Surfware, or as Surfware expressly may consent to in writing. I will cooperate with Surfware and use my best efforts to prevent the unauthorized disclosure, use, or reproduction of any or all Confidential Information.

(d) Upon leaving employment with Surfware for any reason, I immediately will deliver to Surfware all tangible, written, graphical, machine readable, and other materials (including all copies) in my possession or under my control containing or disclosing Confidential Information.

2. Ownership of Inventions

(a) I agree to communicate to Surfware as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by Surfware. I hereby assign to Surfware and/or its nominees all my right, title, and interest in such Inventions, and all my right, title, and interest in any patents, copyrights, patent applications, or copyright applications based thereon. I will assist Surfware and/or its nominees (without charge but at no expense to me) at any time and in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data, computer programs, algorithms, and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provisions of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint Surfware and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyright and other Confidential rights with the same force and effect as if executed and delivered by me.

### 3. Conflicts with Other Activities

(a) My employment with Surfware requires my undivided attention and effort. Therefore, during my employment with Surfware, I will not, without Surfware's express written consent, engage in any employment or business other than for Surfware, or invest in or assist (in any manner) any business competitive with the business or the future business plans of Surfware, other than small passive interests in publicly traded companies.

(b) I agree that during my employment with Surfware, and for two years following its termination for any reason, I will not, without Surfware's express written consent, contact or solicit employees of Surfware for the purpose of hiring them.

(c) My employment with Surfware and my compliance with this Agreement do not and will not breach any agreement to keep in confidence information acquired by me prior to or outside of my employment with Surfware. I have not brought and will not bring with me to Surfware for use in the performance of my duties at Surfware any materials, documents or information of a former employer or any third party that are not generally available to the public unless I have obtained express written authorization from the owner for their possession and use by or for Surfware. I have not entered into, and will not enter into, any agreement, either written or oral, in conflict with this Agreement.

### 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in a writing signed by the CEO, President, or other Officer of Surfware. Any waiver by Surfware of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will not impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligations under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of Surfware.

(d) I understand that the provisions of this Agreement are a material condition to my employment with Surfware. I also understand that (i) my employment is "at-will" and may be terminated by me or Surfware at any time without notice; (ii) this Agreement is not an employment contract; and (iii) nothing in this Agreement creates any right to my continuous employment by Surfware or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to Surfware for which money damages could not reasonably or adequately compensate Surfware. Accordingly, I agree that Surfware will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This Agreement will be governed and interpreted in accordance with the laws of the State of California governing a contract made and wholly performed within California (without regard to its conflict of laws rules).

(g) This Agreement contains the complete agreement between Surfware and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with Surfware.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

AGREED:                                                                     AGREED AND ACKNOWLEDGED: SURFWARE, Inc.

_____  18 APR 2006        _____
Employee Signature              Date                        Surfware Signature                    Date

TERRY J SORENSEN                                     _____
Printed Employee Name                                  Printed Name

**EXHIBIT  B**

## SURFWARE, INC.
## NEW EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Surfware, Inc. ("Surfware") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of Surfware's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of Surfware; (iii) inventions that I create will be owned by Surfware; (iv) my prior and continuing activities separate from Surfware will not conflict with Surfware's development of its proprietary rights; and (v) when and if my employment with Surfware terminates I will not use my prior position with Surfware to the detriment of Surfware. In consideration of my employment by Surfware and other good and valuable consideration associated with my employment by Surfware, I agree:

1. Provisions Related to Trade Secrets.

(a)  I acknowledge that Surfware possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with Surfware. The value of that Proprietary Information depends on it remaining confidential. Surfware depends on me to maintain that confidentiality, and I accept that position of trust.

(b)  As used in this Agreement, "Proprietary Information" means any information (including any formula, algorithm, pattern, compilation, device, method, technique, or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information of Surfware, its customers, suppliers, joint venturers, licensors, licensee, distributors and other persons and entities with whom Surfware does business. Proprietary Information includes, without limitation, customer and employee lists, proprietary Company source code and other software, sales and marketing plans, product development plans, schedules, pricing information, third party confidential information, and other data identified to me as Proprietary Information from time to time.

(c)  I will not disclose or use at any time, either during or after my employment with Surfware, any Proprietary Information except for the exclusive benefit of Surfware as required by my duties for Surfware, or as Surfware expressly may consent to in writing. I will cooperate with Surfware and use my best efforts to prevent the unauthorized disclosure, use, or reproduction of any or all Proprietary Information.

(d)  Upon leaving employment with Surfware for any reason, I immediately will deliver to Surfware all tangible, written, graphical, machine readable, and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

2. Ownership of Inventions

(a)  I agree to communicate to Surfware as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by Surfware. I hereby assign to Surfware and/or its nominees all my right, title, and interest in such Inventions, and all my right, title, and interest in any patents, copyrights, patent applications, or copyright applications based thereon. I will assist Surfware and/or its nominees (without charge but at no expense to me) at any time and in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b)  As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs, algorithms, and formulae, whether patentable or unpatentable.

(c)  Any provision in this Agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provisions of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d)  Notwithstanding the foregoing, I also assign to Surfware (or to any of its nominees) all rights which I may have or acquire in any Invention, full title to which is required to be in the United States by a contract between Surfware and the United States or any of its agencies.

(e)  I hereby irrevocably designate and appoint Surfware and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted

acts to further the prosecution, issuance and enforcement of patents, copyright and other proprietary rights with the same force and effect as if executed and delivered by me.

3. Conflicts with Other Activities

(a) My employment with Surfware requires my undivided attention and effort. Therefore, during my employment with Surfware, I will not, without Surfware's express written consent, engage in any employment or business other than for Surfware, or invest in or assist (in any manner) any business competitive with the business or the future business plans of Surfware, other than small passive interests in publicly traded companies.

(b) I agree that during my employment with Surfware, and for two years following its termination for any reason, I will not, without Surfware's express written consent, contact or solicit employees of Surfware for the purpose of hiring them, and I will not solicit the business of any client or customer of Surfware.

(c) My employment with Surfware and my compliance with this Agreement do not and will not breach any agreement to keep in confidence information acquired by me prior to or outside of my employment with Surfware. I have not brought and will not bring with me to Surfware for use in the performance of my duties at Surfware any materials, documents or information of a former employer or any third party that are not generally available to the public unless I have obtained express written authorization from the owner for their possession and use by or for Surfware. I have not entered into, and will not enter into, any agreement, either written or oral, in conflict with this Agreement.

4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in a writing signed by the President, Vice President, or other officer of Surfware. Any waiver by Surfware of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will not impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligations under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of Surfware.

(d) I understand that the provisions of this Agreement are a material condition to my employment with Surfware. I also understand that (i) my employment is "at-will" and may be terminated by me or Surfware at any time without notice; (ii) this Agreement is not an employment contract; and (iii) nothing in this Agreement creates any right to my continuous employment by Surfware or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to Surfware for which money damages could not reasonably or adequately compensate Surfware. Accordingly, I agree that Surfware will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This Agreement will be governed and interpreted in accordance with the laws of the State of California governing a contract made and wholly performed within California.

(g) This Agreement contains the complete agreement between Surfware and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with Surfware.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

AGREED:                                                    AGREED AND ACKNOWLEDGED: SURFWARE, Inc.

_____  8/15/00        _____  8/28/00
Employee Signature            Date            Surfware Signature            Date

GLENN COLEMAN                              Stephanie Hippik   8/28/00
Printed Employee Name                       Printed Name

New Employee Confidential Information and Inventions Agreement                confid02 10/27/95

B-47

**EXHIBIT  C**

## SURFWARE, INC.
## NEW EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Surfware, Inc. ("Surfware") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of Surfware's Confidential Information; (ii) I will use Surfware's Confidential Information for the exclusive benefit of Surfware; (iii) inventions that I create will be owned by Surfware; (iv) my prior and continuing activities separate from Surfware will not conflict with Surfware's development of its Confidential rights; and (v) when and if my employment with Surfware terminates I will not use Surfware's Confidential Information to the detriment of Surfware. In consideration of my employment by Surfware and other good and valuable consideration associated with my employment by Surfware, I agree:

1. Provisions Related to Confidential Information.

(a)  I acknowledge that Surfware possesses and will continue to develop and acquire valuable Confidential Information (as defined below), including information that I may develop or discover as a result of my employment with Surfware. The value of that Confidential Information depends on it remaining confidential. Surfware depends on me to maintain that confidentiality, and I accept that position of trust.

(b)  As used in this Agreement, "Confidential Information" means any information (including any ideas, concepts, knowhow, structures, information, formula, algorithm, pattern, compilation, device, method, technique, process or materials) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information of Surfware, its customers, suppliers, joint venturers, licensors, licensees, distributors and other persons and entities with whom Surfware does business. Confidential Information includes, without limitation, customer and employee lists, Confidential Company source code and other software, sales and marketing plans, product development plans, schedules, pricing information, third party confidential information, and other data identified to me as Confidential Information from time to time.

(c)  I will not disclose or use at any time, either during or after my employment with Surfware, any Confidential Information except for the exclusive benefit of Surfware as required by my duties for Surfware, or as Surfware expressly may consent to in writing. I will cooperate with Surfware and use my best efforts to prevent the unauthorized disclosure, use, or reproduction of any or all Confidential Information.

(d)  Upon leaving employment with Surfware for any reason, I immediately will deliver to Surfware all tangible, written, graphical, machine readable, and other materials (including all copies) in my possession or under my control containing or disclosing Confidential Information.

2. Ownership of Inventions

(a)  I agree to communicate to Surfware as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by Surfware.  I hereby assign to Surfware and/or its nominees all my right, title, and interest in such Inventions, and all my right, title, and interest in any patents, copyrights, patent applications, or copyright applications based thereon.  I will assist Surfware and/or its nominees (without charge but at no expense to me) at any time and in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b)  As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data, computer programs, algorithms, and formulae, whether patentable or unpatentable.

(c)  Any provision in this Agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provisions of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d)  I hereby irrevocably designate and appoint Surfware and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyright and other Confidential rights with the same force and effect as if executed and delivered by me.

3. Conflicts with Other Activities

Employee Confidential Information and Inventions Agreement                               March 1, 2004

a) My employment with Surfware requires my undivided attention and effort. Therefore, during my employment with Surfware, I will not, without Surfware's express written consent, engage in any employment or business other than for Surfware, or invest in or assist (in any manner) any business competitive with the business or the future business plans of Surfware, other than small passive interests in publicly traded companies.

(b) I agree that during my employment with Surfware, and for two years following its termination for any reason, I will not, without Surfware's express written consent, contact or solicit employees of Surfware for the purpose of hiring them.

(c) My employment with Surfware and my compliance with this Agreement do not and will not breach any agreement to keep in confidence information acquired by me prior to or outside of my employment with Surfware. I have not brought and will not bring with me to Surfware for use in the performance of my duties at Surfware any materials, documents or information of a former employer or any third party that are not generally available to the public unless I have obtained express written authorization from the owner for their possession and use by or for Surfware. I have not entered into, and will not enter into, any agreement, either written or oral, in conflict with this Agreement.

4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in a writing signed by the CEO, President, or other Officer of Surfware. Any waiver by Surfware of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will not impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligations under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of Surfware.

(d) I understand that the provisions of this Agreement are a material condition to my employment with Surfware. I also understand that (i) my employment is "at-will" and may be terminated by me or Surfware at any time without notice; (ii) this Agreement is not an employment contract;  and (iii) nothing in this Agreement creates any right to my continuous employment by Surfware or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to Surfware for which money damages could not reasonably or adequately compensate Surfware. Accordingly, I agree that Surfware will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This Agreement will be governed and interpreted in accordance with the laws of the State of California governing a contract made and wholly performed within California (without regard to its conflict of laws rules).

(g) This Agreement contains the complete agreement between Surfware and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with Surfware.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

AGREED:                                                                                    AGREED AND ACKNOWLEDGED: SURFWARE, Inc.

_____  11-8-04          _____  11-8-04
Employee Signature              Date               Surfware Signature              Date

_Evan Sherbrooke_                                  _Alan Diehl_
Printed Employee Name                              Printed Name

**EXHIBIT  D**



**SURFWARE**
Developers of SURFCAM

April 18, 2006

Terry J Sorensen
800 East Route 66, #28
Glendora, CA 91740

Employment Agreement

Dear Terry:

Welcome to Surfware!  On behalf of the Board of Directors of Surfware, Inc.
("Surfware"), I am pleased to confirm our offer to have you join Surfware on the terms
set forth below.

1. **Position.**  You will be employed by Surfware as its Chief Executive Officer and
   President effective May 1, 2006 (the "Commencement Date") and continuing
   thereafter until termination of your employment.  You will have responsibility for
   overall management of Surfware and will report directly to the Board of
   Directors of Surfware (the "Board").  During your term of employment, you will
   also be appointed to the Board.  You will be expected to devote your full working
   time, energy, attention, and skill to the business of Surfware and to the promotion
   of its interests.

2. **Duties:**  You acknowledge that upon commencement of your employment, you
   will owe a duty of loyalty to Surfware and that all of your services shall be
   performed conscientiously and to the fullest extent of your abilities.  You will not
   engage or participate in any business that is competitive with the business of
   Surfware.  You will be expected to comply with and be bound by Surfware's
   operating policies, procedures and practices.

3. **Salary.**  Your initial annual base salary will be $168,000, which will be payable
   in accordance with Surfware's normal payroll practices with such payroll
   deductions and withholdings as are required by law.  Your base salary will be
   reviewed on an annual basis and may be increased (but not decreased) from time
   to time, at the discretion of the Board.

4. **Bonus.**  In addition to your base salary, you will be eligible to receive an
   Individual Performance Bonus - up to 20% of salary based upon individual
   performance of your job responsibilities and Surfware's profitability.  Surfware
   also has an Annual Company Bonus Program.  Since this bonus is based upon

18 APR 06

company performance, we cannot promise that it will always be paid, or how much it will be.

5. **Term of Employment.**  Your employment shall begin on the Commencement Date and end on the second anniversary thereof, unless Surfware provides you with notice of its intention to extend or renew the term of this Agreement within 60 days of the expiration of the initial term, or unless the Agreement is terminated sooner in accordance with the provisions of Section 8 or 9.

6. **Benefits.**  You will be eligible to participate in all benefit plans, now or hereafter maintained by Surfware.  Following are some of the highlights:  You may participate in our 401(k) program on the first day of the calendar quarter, and medical and dental benefits on the first day of the calendar month following 30 days of employment.  Surfware offers five sick days and ten paid holidays a year, two of which are "floating holidays."  You will receive an automobile allowance of $1,000 per month.  You will earn three (3) weeks of vacation annually.

7. **Expense Reimbursement.**  Surfware will reimburse you for all reasonable amounts actually expended by you in the course of performing your duties, provided such expenses are accounted for in accordance with Surfware's policies and procedures.

8. **Termination Not for Cause:**  In the event your employment is terminated for the convenience of Surfware you shall receive, contingent upon your signing Surfware's Severance Agreement and General Release, six months' base salary as separation pay.   In the event your employment is terminated due to death, your estate or beneficiaries shall receive one and one-half year's base annual salary.

9. **Termination for Cause:**  Surfware may terminate this Agreement for "Cause" upon written notice to you, and your employment will terminate on the date specified in such notice.  For purposes of this Agreement, "Cause" means the following actions or inactions by you:

   a. Gross negligence, recklessness, dishonesty, or willful misconduct in the performance of your business duties; or

   b. Conviction of any crime involving violence, fraud or moral turpitude; or

   c. Continued material breach of this Employment Agreement or continued failure in any material respect to perform your employment duties for more than ten (10) business days after having received written notice specifying the nature of the failure; or

   d. Failure or inability for any reason (other than disability, paid time off, or other leave provided by law) for a period of ten (10) business days to



D-51

devote substantially all of your time during normal business hours to the business of Surfware; or

e.   Commission of any fraudulent conduct, conduct that constitutes a violation of any laws, or a breach of fiduciary duties, including the duty of loyalty, or other acts or conduct that materially affects Surfware's business or reputation; or

f.   Harassing or willfully injuring any employee of Surfware, or any other person in the performance of services for Surfware, or the commission of any act which in Surfware's reasonable, good faith judgment creates an offensive or hostile work environment; or

g.   Disclosing to a competitor or other unauthorized person Surfware's confidential or proprietary information, or solicitation of business on behalf of a competitor or potential competitor.

No act shall be willful if it is performed in good faith and with the belief that it is in Surfware's best interests.  Surfware shall not be limited to termination as a remedy for any improper or illegal act, but may also seek damages, injunction or any other remedy as it may deem appropriate under the circumstances.

10. **Confidential Information and Invention Agreement.**  You agree to sign and comply with Surfware's Confidential Information and Invention Agreement, which agreement is attached hereto and incorporated herein.

11. **Non-solicitation:**  During the term of this Agreement and for one year thereafter, you will not, on your own behalf or on behalf of any third party, solicit or induce any employee of Surfware to terminate employment with Surfware.

12. **General:**

a.   **Enforcement:**  In the event of any action to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable costs and expenses of enforcement, including without limitation, reasonable attorney's fees.

b.   **Entire Agreement:**  This Agreement, along with the Confidential Information and Invention Agreement, represent the entire agreement and understanding between Surfware and you concerning your employment with Surfware, and supersedes and replaces any and all prior agreements and understandings concerning the subject matter hereof.

c.   **Amendment, Waiver:**  This Agreement may be amended only in a writing signed by both parties.  The failure of a party to insist upon strict adherence to any term of this Agreement on any occasion shall not be

considered a waiver of such party's rights or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of Agreement.

d. **Governing Law/Severability:** This Agreement shall be governed by the laws of the State of California, without regard to or application of choice of law rules or principles. In the event that any provision is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision, and there shall be deemed substituted for such invalid, illegal or unenforceable provision such other provision as will most nearly accomplish the intent of the parties to the extent permitted by applicable law.

e. **Notices:** Notices under this Agreement must be in writing and will be deemed to have been received when personally delivered, or one day after being sent by a well established commercial overnight service. Mailed notices will be addressed to you at the home address most recently communicated to Surfware. Notices to Surfware will be addressed to its General Counsel at Surfware's address.

f. **Acknowledgment:** You acknowledge that you have had the opportunity to discuss this matter with and obtain advice from your private attorney, have had sufficient time to, and have carefully read and fully understand all the provisions of this Agreement.

Again Terry, we are very pleased to extend this offer of employment to you and look forward to your joining Surfware. Please indicate your acceptance of the terms of this Agreement by signing in the place indicated below.

Very truly yours,

_Alan Diehl_                         April 18, 2006

Alan Diehl
Chairman of the Board
Surfware, Inc.

Accepted:

_Terry J Sorensen_               April 18, 2006

Terry J Sorensen

**EXHIBIT E**

## MUTUAL NON-DISCLOSURE AGREEMENT

Surfware, Inc.. ("Surfware") and Evan Sherbrooke contemplate one or more meetings and various communications which will involve the disclosure by Surfware and Glenn Coleman, to each other, of technical, business, marketing, planning, and other information and data, in written, oral, magnetic, photographic and/or other forms, including information and data regarding the development of a Business Plan for a new corporate entity (NewCo) (collectively "Information").

The parties agree as follows:

1.   The Information shall be used by Surfware and Glenn Coleman solely for the purpose of developing a Buiness Plan which if mutually agreed upon by both parties will lead to the formation of a new corporate entity (NewCo) by Evan Sherbrooke and Glenn Coleman, in which Surfware, Inc. will have a (45%) full equity interest.

2.   The Information is proprietary to the disclosing party (the "Disclosing Party") and is, and shall remain, the property of the Disclosing Party.  If either party, in disclosing Information to the other, desires to preserve and protect the confidential and proprietary nature of such Information, the Disclosing Party shall identify such Information as Confidential Information in one of the following manners:

   (a)   if any of such Information is disclosed in written or graphic form, the Disclosing Party shall clearly mark such Information as "Confidential" or "Proprietary," or with words of similar import by appropriate stamp or legend, and the written or graphic forms together with all oral communications concerning said written or graphic forms and/or the subject matter thereof shall be considered Confidential Information;

   (b)   if such Information is disclosed orally only, by way of demonstration, electronic means or otherwise, the Disclosing Party shall identify such Information as "Confidential" or "Proprietary" at the time of oral or electronic disclosure or demonstration and shall confirm the same by delivery, to the receiving party ("Receiving Party"), of a written identification of the Information so disclosed or demonstrated within twenty (20) days of the date of such oral disclosure or demonstration which has been marked "Confidential" or "Proprietary".

3.   Tangible forms of the Confidential Information shall not be copied, in whole or in part, without the prior written consent of the Disclosing Party.

4.   The Receiving Party and its employees, officers, agents, and affiliates shall hold the Confidential Information in confidence and shall not, without the prior written consent of the Disclosing Party, disclose the Confidential Information to either (a) persons within the Receiving Party's organization not having a need to know, or (b) persons outside the Receiving Party's organization, regardless of the reason.  The Receiving Party shall use the same degree of care to avoid disclosure of Information as it employs with respect to its own Confidential Information, using at least a reasonable standard of care.  The Confidential Information should not be used for any purpose unrelated to the purpose stated in paragraph 1.  The obligations of this paragraph also apply to the fact of the occurrence of all meetings and communications of the parties which involve Confidential Information, the existence of the Confidential Information and to this agreement itself, and shall survive the termination of this Agreement.

5.   The Receiving Party understands and agrees that it is not allowed to sell, license, develop or otherwise exploit any parts, products, services, documents or information which embody in whole or in part any Confidential Information.

6.   The confidentiality and non-disclosure obligations of the previous paragraphs shall not apply if, and to the extent that;

(a) the Confidential Information was rightfully known to the Receiving Party prior to its receipt from the Disclosing Party;

(b) the Confidential Information is or becomes part of the public domain other than by the fault of the Receiving Party;

(c) the Confidential Information is rightfully disclosed to the Receiving Party by a third party that is legally free to disclose such Confidential Information;

(d) such Confidential Information is independently developed by the Receiving Party without access to the Disclosing Party's Confidential Information;

(e) disclosure is required by a judicial order or decree or governmental law or regulation, provided that the Receiving Party promptly notifies the Disclosing Party of such requirement and reasonable opportunity is allowed by the Receiving Party for the Disclosing Party to file or obtain a protective order or otherwise proceed to protect under applicable interests of the Disclosing Party;

(f) the Confidential Information is furnished to a third party by Disclosing Party without similar confidentiality restriction on the third party.

7. Although this agreement does not restrict the receiving Party from working with a person or entity which has independently developed information or materials similar to the Confidential Information, in such circumstance, the Receiving Party agrees not to disclose the fact that any similarity exists between the Confidential Information and the independently developed information and materials, and the Receiving Party understands that such similarity does not excuse the Receiving Party from the nondisclosure and other obligations in this agreement.

8. All Information supplied by a Disclosing Party hereunder and all copies thereof, in whole or in part and on all media, shall be returned to the Disclosing Party by the Receiving Party promptly upon demand by the Disclosing Party.

9. The furnishing of any Information hereunder shall not be construed as the granting of a license under any patent, patent applications, copyright, copyright registration, trade secret or other proprietary right by the Disclosing Party to the other or as implying any obligation other than is specifically stated herein.

10. With regard to Information exchanged by the parties hereunder, the Receiving Party agrees not to export such Information to any country to which such export is prohibited by laws and regulations of the government of the United States.

11. This Agreement shall continue to govern the delivery of Information between the parties until terminated by written notice from either party to the other. In the event of termination, this agreement shall continue to apply with respect to Information that was supplied under this agreement prior to termination, and the obligations as to confidentiality shall continue to apply for five years thereafter unless terminated sooner under a provision of paragraph 6 or pursuant to a written authorization or agreement of the Disclosing Party.

12. Both parties recognize that each party is in the business of providing products to various customers, and each party agrees that none of the provisions of this agreement will be construed to limit the other party's offering of products to such customers provided that such offerings are consistent with each party's obligations of confidence accepted herein. No right to use any Confidential or Proprietary information of the other party exists, however, with respect to such offering of products by a party.

13. This Agreement shall apply to any Confidential Information that may have been provided to either party prior to the effective date hereof.

14. This Agreement shall be binding on the respective parties hereto and their successors and permitted assigns.

Mutual Non-Disclosure Agreement                    2                                 2006



15. This Agreement shall be governed by the laws of the State of California, United States of America.

16. This Agreement is the entire agreement between the parties and supersedes any and all prior or contemporaneous representations, agreements and promises, written or oral between Surfware and Company, regarding the subject matter of this Agreement. This Agreement may be modified only in writing signed by both parties hereto.

WHEREFORE, by their signatures below, the parties hereto acknowledge that they have reviewed carefully what has been expressed in this document, which they understand is a legally binding document, and that the understandings and agreements expressed in this document are binding upon them.

SURFWARE, INC.

By: _____
                  Signature

Name: Terry J Sorensen _____
                  Please print

Title: CEO and President _____

5703 Corsa Avenue
Westlake Village, CA 91362

Date: 6 Nov 06 _____

By: _____
                  Signature

Name: Evan Sherbrooke _____

Address: 4146 Dakota Dr
         Moorpark CA 93021

Date: 11-6-06 _____

Mutual Non-Disclosure Agreement                    3                              2006

**EXHIBIT F**

## MUTUAL NON-DISCLOSURE AGREEMENT

Surfware, Inc.. ("Surfware") and Glenn Coleman contemplate one or more meetings and various communications which will involve the disclosure by Surfware and Glenn Coleman, to each other, of technical, business, marketing, planning, and other information and data, in written, oral, magnetic, photographic and/or other forms, including information and data regarding the development of a Business Plan for a new corporate entity (NewCo) (collectively "Information").

The parties agree as follows:

1.  The Information shall be used by Surfware and Glenn Coleman solely for the purpose of developing a Buiness Plan which if mutually agreed upon by both parties will lead to the formation of a new corporate entity (NewCo) by Glenn Coleman and Evan Sherbrooke, in which Surfware, Inc. will have a (45%) full equity interest.

2.  The Information is proprietary to the disclosing party (the "Disclosing Party") and is, and shall remain, the property of the Disclosing Party.  If either party, in disclosing Information to the other, desires to preserve and protect the confidential and proprietary nature of such Information, the Disclosing Party shall identify such Information as Confidential Information in one of the following manners:

    (a)  if any of such Information is disclosed in written or graphic form, the Disclosing Party shall clearly mark such Information as "Confidential" or "Proprietary," or with words of similar import by appropriate stamp or legend, and the written or graphic forms together with all oral communications concerning said written or graphic forms and/or the subject matter thereof shall be considered Confidential Information;

    (b)  if such Information is disclosed orally only, by way of demonstration, electronic means or otherwise, the Disclosing Party shall identify such Information as "Confidential" or "Proprietary" at the time of oral or electronic disclosure or demonstration and shall confirm the same by delivery, to the receiving party ("Receiving Party"), of a written identification of the Information so disclosed or demonstrated within twenty (20) days of the date of such oral disclosure or demonstration which has been marked "Confidential" or "Proprietary".

3.  Tangible forms of the Confidential Information shall not be copied, in whole or in part, without the prior written consent of the Disclosing Party.

4.  The Receiving Party and its employees, officers, agents, and affiliates shall hold the Confidential Information in confidence and shall not, without the prior written consent of the Disclosing Party, disclose the Confidential Information to either (a) persons within the Receiving Party's organization not having a need to know, or (b) persons outside the Receiving Party's organization, regardless of the reason. The Receiving Party shall use the same degree of care to avoid disclosure of Information as it employs with respect to its own Confidential Information, using at least a reasonable standard of care. The Confidential Information should not be used for any purpose unrelated to the purpose stated in paragraph 1.  The obligations of this paragraph also apply to the fact of the occurrence of all meetings and communications of the parties which involve Confidential Information, the existence of the Confidential Information and to this agreement itself, and shall survive the termination of this Agreement.

5.  The Receiving Party understands and agrees that it is not allowed to sell, license, develop or otherwise exploit any parts, products, services, documents or information which embody in whole or in part any Confidential Information.

6.  The confidentiality and non-disclosure obligations of the previous paragraphs shall not apply if, and to the extent that;

(a)  the Confidential Information was rightfully known to the Receiving Party prior to its receipt from the Disclosing Party;

(b)  the Confidential Information is or becomes part of the public domain other than by the fault of the Receiving Party;

(c)  the Confidential Information is rightfully disclosed to the Receiving Party by a third party that is legally free to disclose such Confidential Information;

(d)  such Confidential Information is independently developed by the Receiving Party without access to the Disclosing Party's Confidential Information;

(e)  disclosure is required by a judicial order or decree or governmental law or regulation, provided that the Receiving Party promptly notifies the Disclosing Party of such requirement and reasonable opportunity is allowed by the Receiving Party for the Disclosing Party to file or obtain a protective order or otherwise proceed to protect under applicable interests of the Disclosing Party;

(f)  the Confidential Information is furnished to a third party by Disclosing Party without similar confidentiality restriction on the third party.

7.   Although this agreement does not restrict the receiving Party from working with a person or entity which has independently developed information or materials similar to the Confidential Information, in such circumstance, the Receiving Party agrees not to disclose the fact that any similarity exists between the Confidential Information and the independently developed information and materials, and the Receiving Party understands that such similarity does not excuse the Receiving Party from the nondisclosure and other obligations in this agreement.

8.   All Information supplied by a Disclosing Party hereunder and all copies thereof, in whole or in part and on all media, shall be returned to the Disclosing Party by the Receiving Party promptly upon demand by the Disclosing Party.

9.   The furnishing of any Information hereunder shall not be construed as the granting of a license under any patent, patent applications, copyright, copyright registration, trade secret or other proprietary right by the Disclosing Party to the other or as implying any obligation other than is specifically stated herein.

10.  With regard to Information exchanged by the parties hereunder, the Receiving Party agrees not to export such Information to any country to which such export is prohibited by laws and regulations of the government of the United States.

11.  This Agreement shall continue to govern the delivery of Information between the parties until terminated by written notice from either party to the other.  In the event of termination, this agreement shall continue to apply with respect to Information that was supplied under this agreement prior to termination, and the obligations as to confidentiality shall continue to apply for five years thereafter unless terminated sooner under a provision of paragraph 6 or pursuant to a written authorization or agreement of the Disclosing Party.

12.  Both parties recognize that each party is in the business of providing products to various customers, and each party agrees that none of the provisions of this agreement will be construed to limit the other party's offering of products to such customers provided that such offerings are consistent with each party's obligations of confidence accepted herein.  No right to use any Confidential or Proprietary information of the other party exists, however, with respect to such offering of products by a party.

13.  This Agreement shall apply to any Confidential Information that may have been provided to either party prior to the effective date hereof.

14.  This Agreement shall be binding on the respective parties hereto and their successors and permitted assigns.

Mutual Non-Disclosure Agreement                    2                              2006

15. This Agreement shall be governed by the laws of the State of California, United States of America.

16. This Agreement is the entire agreement between the parties and supersedes any and all prior or contemporaneous representations, agreements and promises, written or oral between Surfware and Company, regarding the subject matter of this Agreement. This Agreement may be modified only in writing signed by both parties hereto.

WHEREFORE, by their signatures below, the parties hereto acknowledge that they have reviewed carefully what has been expressed in this document, which they understand is a legally binding document, and that the understandings and agreements expressed in this document are binding upon them.

SURFWARE INC.

By: _____
          Signature

Name: Terry J Sorensen
                Please print

Title: CEO and President

          5703 Corsa Avenue
          Westlake Village, CA 91362

Date: 6 Nov 06

By: _____
          Signature

Name: Glenn Coleman

Address: 5349 E. FOREST PLEASANT PLACE
              CAVE CREEK, AZ 85331

Date: 11/6/06

Mutual Non-Disclosure Agreement          3          2006

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV08- 6753 AHM (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

**[X] Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

**[_] Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

**[_] Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

# United States District Court

## CENTRAL   DISTRICT OF CALIFORNIA

SURFWARE, INC., a California corporation

**SUMMONS IN A CIVIL CASE**

### v.

CELERITIVE TECHNOLOGIES, INC., an Arizona
Corporation, TERRY SORENSON, an individual,
GLENN COLEMAN, an individual, EVAN
SHERBROOKE, an individual and DOES 1-25

CASE NUMBER:

CV08-06753 AHM AJWX

TO:   (Name and address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Joel P. Kelly, Esq.
Nicky Jatana, Esq.
JACKSON LEWIS LLP
725 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5408

Kenneth H. Wennergren, Esq.
Wennergren Law Offices
199 South Figueroa Street, 3rd Floor
Ventura, California  93001

an answer to the complaint which is herewith served upon you, within 20    days after service of this summons upon you,
exclusive of the day of service.  If you fail to do so, judgement by default will be taken against you for the relief demanded in
the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Terry Nafisi

CLERK

DATE  OCT 1 4 2008



LA'REE HORN

(BY) DEPUTY CLERK

1192

ORIGINAL

AO-440

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |

| Name of SERVER | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐  Served Personally upon the Defendant. Place where served:

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

☐  Returned unexecuted:

☐  Other *(specify):*

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                          *Date*                                              *Signature of Server*


                                                          _____
                                                                    *Address of Server*


(1)  As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| SURFWARE, INC., a California corporation | CELERITEE TECHNOLOGIES, INC., an Arizona Corporation, TERRY SORENSON, an individual, GLENN COLEMAN, an individual, EVAN SHERBROOKE |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Joel P. Kelly (#100716)<br>Nicky Jatana (#197682)<br>JACKSON LEWIS LLP<br>725 S. Figueroa St., #2500<br>Los Angeles, CA 90017<br>(213) 689-0404 | Kenneth H. Wennergren#086734<br>Wennergren Law Offices<br>199 S. Figueroa St., 3rd Flr<br>Ventura, CA 93001<br>(805) 643-3890 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

18 U.S.C. § 1030 et seq., 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)    CV08-06753    CIVIL COVER SHEET    Page 1 of 2

CCD-JS44

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  [X] No   [ ] Yes

If yes, list case number(s):

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  [X] No   [ ] Yes

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| VENTURA COUNTY | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| VENTURA COUNTY (Sorensen & Sherbrooke) | STATE OF ARIZONA (Coleman) |
| | STATE OF ARIZONA (CELERITIVE) |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES and VENTURA | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):**   Date  Oct 14, 2008

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |